■ CITY OF NEW YORK, Respondent, v KALIKOW REALTY COMPANY, Appellant.—Judgment of the Supreme Court, New York County (Leonard N. Cohen, J.), entered April 17, 1986, which, *inter alia,* granted plaintiff City of New York's motion for summary judgment, is affirmed, without costs and without disbursements.

Appeal from the order of the Supreme Court, New York County (Leonard N. Cohen, J.), entered March 17, 1986, which

granted plaintiff's motion for summary judgment and denied defendant's cross motion for an order dismissing the complaint pursuant to CPLR 3211 (a) (7), is dismissed as subsumed in the judgment appealed from herein, without costs.

The facts are essentially those set forth in the dissent. As noted there, the city formally notified defendant Kalikow Realty Company that a defect in the sidewalk abutting its premises needed repair. This notification was pursuant to a violation placed against defendant directing it to repair the sidewalk, pursuant to the provisions of section 230 of the New York City Charter. This section provides, *inter alia,* that if necessary repairs are not made, the city can make them at the owner's expense. Kalikow responded with a letter dated July 10, 1972, which reads as follows:

"Please be advised that we are in receipt of a violation (a Xerox copy of which is enclosed) on the above referenced property.

"We have erected a fence and repaired the sidewalk so as to be in a safe condition. We intend to start construction at the said site within the next year and shall until then and during the entire course of construction maintain the sidewalk in a safe condition.

"Upon completion of our building the sidewalk will be completely reconstructed. We request the City of New York not to proceed with any work as outlined on the violation since such work would of necessity be destroyed at the start of construction."

At a time when the construction referred to in the letter was still under way, one Manos tripped and fell on a broken portion of that sidewalk. Manos sued the city and, although defendant Kalikow Realty Company was never joined, the construction contractor, Kalikow Realty and Construction Corporation, *was* sued.

The sole basis for the finding of liability against the city was its statutory duty to maintain the city sidewalks. The language of the letter, *supra,* however, clearly shows that Kalikow voluntarily assumed the duty to maintain the sidewalk in a safe condition during the course of the planned construction. Although, as the dissent emphasizes, the city had a nondelegable duty to maintain the sidewalk, it must be emphasized that that duty ran to Manos. By affirmatively sending the letter agreement prevailing upon the city not to proceed with any repair work, Kalikow became liable in indemnification for its failure to carry out its voluntary assumption of a duty to the city.

Similarly, in *Burke v City of New York* (2 NY2d 90), a railway agreed with the city that it would repair the trolley track rail as long as it remained in the public street. Although the agreement did not contain explicit language of indemnity, the Court of Appeals held that the railway's successor would be required to indemnify the city for a judgment recovered by a pedestrian who had been injured on the rail. After reviewing the applicable case law, Judge Fuld, for the court, wrote: "In the light of these decisions, it is clear that an agreement to keep the track area in repair, whether or no it contains explicit language of indemnity, carries with it an obligation to indemnify the city for damages resulting from the company's failure to perform its undertaking and discharge its duty. And, once the municipality's right to indemnification is recognized, it obviously matters not whether the city chooses to assert its right by a suit separately brought against the railway company, as in *City of Brooklyn (supra,* 47 N. Y. 475), or, as here, by a cross complaint in the original action instituted by the injured person" *(supra,* at 94).

While the dissent, in this case, notes that the "record should contain a transcript of the proceedings in which the underlying liability determination was rendered so that an independent judgment can be made as to whether * * * the city's conduct of the defense was as vigorous as it would have been had the prospect of indemnification not existed", the city, in its reply affirmation by Herbert Perlman, advised that at the time of argument of the motion, it would "hand up to this Court for its information and perusal, a copy of the trial testimony taken at the Manos trial, to show the adequacy of the City's defense in that action." Further, the Supreme Court in the decision under review herein specifically pointed out that the defendant's "conclusory assertion [that the city failed to adequately defend the *Manos* action] is unsupported and, in fact, is proven incorrect by the transcript of that trial. That transcript shows that an adequate defense was presented."

Although the record as submitted to us by defendant-appellant Kalikow does not contain a copy of the transcript, clearly it was before the court when it granted plaintiff's motion for summary judgment. Moreover, the fact that defendant Kalikow has not raised the city's defense of the *Manos* action as an issue upon this appeal only confirms the Supreme Court's finding that this was not a viable issue.

By its letter of July 10, 1972, Kalikow Realty assumed the obligation to maintain the sidewalk in a safe condition. The Manos accident was a direct result of its failure to live up to

its agreement to assume the obligation to maintain the sidewalk. The Supreme Court correctly found, therefore, that the city has a right to indemnification. Concur—Ross, Asch and Ellerin, JJ.

Murphy, P. J., and Rosenberger, J., dissent in a memorandum by Murphy, P. J., as follows: On June 27, 1972, the city notified Kalikow Realty Company (Kalikow) that a defect in the sidewalk abutting its premises needed repair. Kalikow responded by letter indicating that the sidewalk had been repaired, and that Kalikow would maintain the sidewalk in a safe condition until its construction of the premises was complete. Approximately two years later, while the premises were still under construction, a pedestrian was injured as a result of a defect in the sidewalk abutting Kalikow's premises. The pedestrian sued the city and the contractor for negligence. Kalikow was neither sued nor impleaded by the city. The jury verdict and $95,486.46 judgment were against the city only. After satisfying the judgment, the city, in a separate action, sought indemnification from Kalikow. Special Term granted summary judgment in favor of the city.

Initially, the instant case should be distinguished from those cases in which indemnification is granted as against an impleaded third-party defendant. Impleader permits, and, in fact, encourages a third-party defendant to defend the main action himself; the third-party defendant "stands in the shoes" of the defendant and may assert any defenses the defendant may have against the plaintiff's main claim. (See, CPLR 1008; *Phillips v Chevrolet Tonawanda Div.,* 43 AD2d 891, 892 [4th Dept 1974].) Impleader implicitly acknowledges that if a defendant is reasonably certain of receiving an indemnity judgment over, his defense of the main action may be less than zealous. (Siegel, NY Prac § 163, at 204.)

Here, Kalikow was never made a party to the underlying personal injury action and was never afforded the opportunity it would have had as an impleaded third-party defendant to controvert the claims asserted by the plaintiff therein. *(Contrast, Burke v City of New York,* 2 NY2d 90 [1956], *and Rogers v Dorchester Assocs.,* 32 NY2d 553 [1973] [where the proposed indemnitors were joined in the main action].) While this does not prevent the city from seeking indemnity in a separate action, it leaves unanswered the question of whether the city adequately defended against the judgment upon which the present derivative claim is based. Certainly, a cause for indemnification is deprived of its equitable underpinnings when it is unsupported by a showing that the main action was

properly defended. I do not think it can be said that the city has made such a showing in this case.

The record contains only minor excerpts from the trial transcripts and a conclusory affidavit in which counsel for a city departmental agency attests to the competency of the city's defense; counsel's opinion is based primarily upon the city trial attorney's experience and reputation and the fact that the money judgment was less than the amount the injured party sought in the complaint. I cannot agree that this is a sufficient basis to establish the adequacy of the city's performance. At a minimum, the record should contain a transcript of the proceedings in which the underlying liability determination was rendered so that an independent judgment can be made as to whether the damages awarded were a fair reflection of the plaintiff's injuries and whether, upon the entire record, the city's conduct of the defense was as vigorous as it would have been had the prospect of indemnification not existed. Absent such a showing, I do not think the city has made out a prima facie case for indemnification. At best, the city's showing leaves an open factual issue respecting its advocacy as a defendant in the personal injury action, barring summary disposition of the case. (See, Rotuba Extruders v Ceppos, 46 NY2d 223 [1978].)

Moreover, in my view, the application of the doctrine of implied indemnity in the circumstances here obtaining is inappropriate. While there is, arguably, some basis in precedent for so employing the doctrine, resort to its use should be tempered by careful consideration of its underlying rationale and the policy consequences resulting from its application.

The city has been directed by the Legislature to maintain its sidewalks in good condition. This duty is nondelegable. If the duty may not be delegated, neither may liability for its nonperformance be effectively shifted to another.

While section 230 of the New York City Charter requires a property owner to "install, reconstruct, repave and repair the sidewalk in front of or abutting such property", it also provides that "[a]ll such work shall be done * * * in accordance with such specifications and regulations as may be prescribed by the transportation administration". It is the administration's duty to determine "[w]henever * * * a sidewalk should be * * * repaired". It is additionally the administration's duty to cure a defect left unremedied by a property owner who has been put on notice and, thereafter, to charge the owner for the repair. Clearly, section 230 does not shift the responsibility of maintaining and repairing public sidewalks to the

abutting landowner. Indeed, the cases hold that a statutory provision such as section 230 of the New York City Charter is "merely regulatory in nature and does not impose tort liability upon an abutting owner" *(Jacques v Maratskey,* 41 AD2d 883 [3d Dept 1973]; *see, City of Rochester v Campbell,* 123 NY 405 [1890]).

The Legislature clearly intended that the city would remain primarily responsible for maintaining its streets in good condition, and indeed, there is no reason to effectively shift the responsibility by employing the doctrine of implied indemnity. The city is plainly capable of maintaining its sidewalks. In this respect it is to be contrasted with the building owner in *Rogers v Dorchester Assocs. (supra,* at 561), who was "ill-equipped to service the complicated, delicate, and potentially dangerous elevator apparatus." *(See also, supra,* at 566.) Under the circumstances in *Rogers,* where there was no option but to delegate the duty imposed by statute, indemnification was appropriate because the owner's liability was truly vicarious. The city's liability in the present case, however, reflects its actual failure to do what it could have and should have done to avoid the complained-of harm.

As was ably stated by Justice Eder in his concurrence in *Burke v City of New York (supra,* at 95-96), " 'Implied indemnity' is a doctrine 'based upon principles of equity' *(Trustees of Geneva* v. *Brush Elec. Co.,* 50 Hun 581, 584) evolved by the courts to ameliorate in exceptional circumstances 'the rigor of the rule which forbids recourse between wrongdoers.' *(Washington Gas Light Co.* v. *District of Columbia,* 161 U. S. 316, 327.) It is applied only in situations where the relationship between joint tort-feasors to one another or to the event indicates such a difference in their respective delinquencies that one may be said to be actually or primarily, and the other only legally or secondarily, responsible for the happening of the consequent damages." Classic common-law indemnification situations concern vicariously liable tort-feasors and tort-feasors guilty of the acts or omissions causing harm: e.g., master and servant; employer and negligent employee; automobile owner and negligent driver; building owner and independent contractor exclusively responsible for maintenance of the building or parts thereof (as in *Rogers v Dorchester Assocs., supra).* In time, the doctrine of implied indemnification was broadened so that "one who was cast in damages for negligence could, if his negligence were merely 'passive', nevertheless shift his liability to the tort-feasor whose negligence was considered 'active'." *(D'Ambrosio v City of New*

*York,* 55 NY2d 454, 461 [1982]; *see, e.g., Burke v City of New York, supra; and, e.g., City of Brooklyn v Brooklyn City R. R. Co.,* 47 NY 475, 478 [1872].)

The necessity of applying the active/passive criteria in indemnification situations has been largely eliminated by *Dole v Dow Chem. Co.* (30 NY2d 143 [1972]), which permits the very recourse between wrongdoers, the absence of which was formerly ameliorated by application of the doctrine of implied indemnity. *"Dole* rejected the unpredictable result of attempting to shift entire liability based upon the theory of whose negligence was greater, and adopted the more realistic approach of holding joint tort-feasors liable according to their respective degrees of fault." *(D'Ambrosio v City of New York, supra,* at 462.) The *Dole* rule was not intended to overturn basic and satisfactory principles of common-law indemnification, but was instituted to address those situations where tort-feasors shared responsibility for causing the harm. *(See, Rogers v Dorchester Assocs., supra,* at 565-566.)

Where, as here, the Legislature has placed with the city the duty of protecting the public from defective sidewalks and streets and the city is clearly capable of meeting the obligation *(cf., Rogers v Dorchester Assocs., supra),* there is no reason in law or policy why the city should not bear the consequences of negligently entrusting its duty to Kalikow. As the city's actual fault is the predicate for its liability, it must share responsibility with Kalikow for the resulting harm. *(Cf., D'Ambrosio v City of New York, supra.)*

The natural consequence of the majority's decision is, I think, most unfortunate, for it tends to provide municipal corporations with a means to avoid the performance of their duties respecting the repair and maintenance of sidewalks and streets. I very much doubt that the equitable doctrine of implied indemnity was intended to so facilitate the transfer of a statutorily imposed nondelegable public obligation. Indeed, given the position the majority now takes, I can see no obstacle to the routine issuance of letters to property owners offering forebearance by the city in exchange for the owner's promise to maintain the abutting sidewalk in good condition. Upon the owner's assent to this attractive proposition, the city would in effect avoid its supposedly nondelegable duty, as it would be assured of complete and summary relief from the consequences of its negligence.

Accordingly, I dissent and would reverse to the extent of denying the city's motion for summary judgment and remanding for further proceedings.