[633 NYS2d 97]

DANIEL ST. JACQUES et al., Appellants, v CITY OF NEW YORK, Respondent.

LARRY J. WILTBANK et al., Appellants, v CITY OF NEW YORK, Respondent.

First Department, September 26, 1995

## APPEARANCES OF COUNSEL

*Joseph L. Decolator* of counsel, Lake Success *(John V. Decolator* and *Michael Majewski* on the brief; *Lysaght, Lysaght & Kramer, P. C.,* attorneys), for appellants.

*Barry P. Schwartz* of counsel, New York City *(Mordecai Newman* on the brief; *Paul A. Crotty, Corporation Counsel* of New York City, attorney), for respondent.

## OPINION OF THE COURT

Ross, J.

The dispositive issue in these appeals is whether the defendant City's failure to cause the sidewalks in question to be repaired in accordance with various sections of the New York City Charter, Administrative Code and Municipal Home Rule Law *(see,* NY City Charter § 2903 [b]; § 2904; Administrative Code of City of NY §§ 19-152, 7-201 [c] [2]; Municipal Home Rule Law § 11 [1] [j]) can support the plaintiffs' actions pursuant to General Municipal Law § 205-e. The injured plaintiffs were police officers who sustained injuries under virtually identical circumstances. Both officers were on duty chasing a suspect on foot when they tripped, fell and were injured due to a depression and/or crack in the respective sidewalks on which they were running. In both cases counsel for the parties stipulated that maps prepared by the Big Apple Pothole & Sidewalk Protection Corporation, which were entered into evidence in each case, showed the sidewalk defect in question and were received by the City well before the respective incidents occurred. It was also stipulated that during the intervening time between receipt of the maps and the incidents in question, the defendant City did not issue notices of violation to the owners of the abutting property.

In *St. Jacques v City of New York,* the City moved for a trial order of dismissal on, *inter alia,* the grounds that the plaintiffs' common-law claims were barred as a matter of law pursuant to *Santangelo v State of New York* (71 NY2d 393)

and that plaintiffs had no viable claim under General Municipal Law § 205-e. The trial court found that pursuant to *Santangelo (supra)*, there was no common-law right of action by a police officer to recover for injuries sustained upon tripping over a defect in a sidewalk while pursuing a suspect. With respect to the General Municipal Law § 205-e claim the court found that the plaintiffs had not set forth evidence that, if believed by a jury, would permit a finding to sustain the City's liability under General Municipal Law § 205-e. Specifically, the Court found that the statute should be strictly construed and that none of the laws relied upon by the plaintiffs imposed a statutory duty on the City to maintain its sidewalks above and beyond its common-law duty.

In *Wiltbank v City of New York,* tried before the same trial court, the City moved for a directed verdict dismissing the complaint. In a ruling from the Bench the trial court granted the City's motion for the reasons stated in its decision in the *St. Jacques* matter.

On appeal plaintiffs have abandoned their common-law negligence causes of action and proceed only on their claims under General Municipal Law § 205-e. Plaintiffs argue that the statute is a remedial measure and should be broadly interpreted to enable police officers to recover against the City of New York, based upon its failure to maintain its sidewalks in accordance with the duty imposed upon it by the Legislature. Plaintiffs cite various sections of the New York City Charter and Administrative Code in order to demonstrate that the City's obligation to maintain its streets and sidewalks in a reasonably safe condition is statutory.

It has long been recognized that the "municipality owes a duty to keep the public sidewalks in a reasonably safe condition" *(D'Ambrosio v City of New York,* 55 NY2d 454, 462). While the duty has generally been recognized as a common-law duty, it has been held that the source of the duty is also statutory *(Lopes v Rostad,* 45 NY2d 617). *Lopes* involved an action against Nassau County and the statutory duty imposed upon it by Highway Law §§ 102 and 139. The case of *City of New York v Kalikow Realty Co.* (71 NY2d 957, *affg* 132 AD2d 481), relied upon by plaintiffs to demonstrate that the defendant City has a statutory obligation as well as one imposed by common law, involved the question, as framed by the Court, of "who, as between the City and [a] property owner, should ultimately pay" the judgment won by a plaintiff who was injured when he fell on a broken sidewalk *(supra,* at 958). In

both the Appellate Division memorandum (132 AD2d 481, 482, *supra)* and the Court of Appeals memorandum (71 NY2d, *supra,* at 958-959) it was acknowledged that the City of New York had a statutory duty to maintain its sidewalks; the Court of Appeals noted that the nondelegable duty was conceded by the City.

The statutes relied upon by the plaintiffs provide as follows: New York City Charter § 2903 (b) provides the Commissioner of Transportation with authority to repair sidewalks, streets, bridges and tunnels. New York City Charter § 2904 sets out the duties and obligations of property owners with respect to "sidewalk flags, fencing of vacant lots and filling of sunken lots or cutting down of raised lots" and Administrative Code § 19-152 sets out the duties and obligations of property owners with respect to sidewalks and lots. Specifically, section 19-152 (d) provides that the Department of Transportation, upon being notified in writing of a dangerous condition in a sidewalk and after determining that the condition constitutes an immediate danger to the public, *may* notify the property owner of the condition and direct same to repair the defect. Section 7-201 (c) (2) of the Administrative Code, commonly referred to as the "Pothole Law", requires written notice of any street defect as a condition precedent to any possible liability on the part of the City for that defect. Finally, Municipal Home Rule Law § 11 (1) (j) provides that the City may not adopt any law that would transfer such liability, as would attach to the City for the failure to maintain sidewalks, to the abutting landowner.

We agree with the trial court's determination that nothing in any of the provisions cited by the plaintiffs imposes upon the City any duty beyond that which exists by virtue of the case law. Review of the provisions in question demonstrates that, rather than explicitly articulate that the City would be liable to an injured person in the manner of Highway Law § 139, the above-cited statutes provide, *inter alia,* the relevant authorities with control over the construction, maintenance and repair of public roadways and sidewalks; further, they delineate the mechanisms by which the City's duty to maintain sidewalks and roads is to be carried out and set out the relevant rights and duties between the City and the abutting landowner. The statutes, which clearly prohibit the City from any "burden shifting", neither diminish the City's nondelegable common-law duty nor add to it.

General Municipal Law § 205-e, in pertinent part, provides a

right of action or recovery, in addition to that created under any other provision of law, to officers injured or killed in the course of performing their duties, where the injury or death occurs directly or indirectly as a result of any neglect, omission, willful or culpable negligence of any person or persons in failing to comply with the requirements of any of the statutes, ordinances, rules, orders and requirements of the Federal, State, county, village, town or city governments, or of any and all of their departments, divisions and bureaus.

It is by now well known that General Municipal Law § 205-e was enacted to bring police officers into parity with firefighters who were already provided with a right of action by General Municipal Law § 205-a *(Ruotolo v State of New York,* 83 NY2d 248, 255; L 1989, ch 346; *see,* Mem of Senator Skelos, 1989 NY Legis Ann, at 180). First enacted on July 12, 1989 (L 1989, ch 346), the enacting legislation of General Municipal Law § 205-e was amended in 1990 and made retroactive to revive actions dismissed on or after January 1, 1987 (L 1990, ch 762). The section was amended a second time in 1992 to provide a right of action to police officers injured in the line of duty, irrespective of whether they were injured as a consequence of a statutory violation respecting the safe maintenance and control of premises *(see,* L 1992, ch 474; *Ruotolo v State of New York, supra,* at 255-256). This last amendment was effected in recognition of the "vastly different public services provided by police and firemen" (Mem of Assembly Rules Comm, 1992 NY Legis Ann, at 285-286), and the fact that police officers may suffer injuries which the Legislature intended to be covered by General Municipal Law § 205-e as a result of violations of statutes other than those governing the proper maintenance and control of "premises" *(Ruotolo v State of New York, supra,* at 255-256).

General Municipal Law §§ 205-a and 205-e were clearly intended to ensure that firefighters and police officers would be able to recover for injures caused by violation of statutes, ordinances, codes, rules and regulations which increase the dangers inherent in their respective work *(see, Kenavan v City of New York,* 70 NY2d 558, 567; Mem of Assembly Rules Comm, 1992 NY Legis Ann, at 285-286). In *Kenavan,* the plaintiff's decedent, a firefighter, was killed and other firefight-

ers were injured while extinguishing a vehicle blaze, when a motorist drove his vehicle striking the firefighters and crashing into the back of their engine. The Court discussed the scope of General Municipal Law § 205-a with regard to the types of statutes and ordinances, the violation of which would provide a basis for recovery. The Court specifically addressed plaintiff's argument that under the plain language of section 205-a the violation of *any* statute, ordinance, rule or order, including a violation of the Vehicle and Traffic Law, would be sufficient to sustain liability under section 205-a. While noting that section 205-a as a remedial statute is to be liberally construed, it was concluded however, that "the intended scope of the enactment is not so far-reaching" as plaintiff in that case contended *(Kenavan v City of New York, supra,* at 566). The Court traced the history of section 205-a and found that despite the use of the phrase "any of the statutes, ordinances, rules [or] orders", the "scope of section 205-a is limited to property owners and the maintenance of premises in a safe condition for firefighters" *(supra,* at 566). The Court rejected the Appellate Division's restriction of the statute to fire preventive provisions only. However, the Court also rejected plaintiff's assertion that the violation of Vehicle and Traffic Law § 1224, Administrative Code § 755 (4)-3.0 and Department of Sanitation General Order No. 5, was sufficient to sustain liability under General Municipal Law § 205-a, on the ground that the sections were "not related to the safety of premises and the failure to comply with their requirements would not increase the risks already inherent in fighting fires generally, or in fighting vehicle fires specifically" *(supra,* at 567).

One of the matters decided with *Zanghi v Niagara Frontier Transp. Commn.* (85 NY2d 423), which is relied upon by the plaintiffs, was *Raquet v Braun* (85 NY2d 423). *Raquet* involved claims by two volunteer firefighters, one of whom was killed and the other paralyzed when the canopy roof of a building addition and a portion of the addition's masonry wall collapsed during a fire. The statutes and ordinances involved in *Zanghi* were building codes, which the Court noted are generally fire safety oriented. The violation of such provisions was found by the Court to have enhanced the risk of injury to firefighters from the collapse of building structures. Thus,

contrary to the dissent's apparent interpretation and the plaintiffs' argument regarding that case, the Court's ruling did not materially expand the scope of the General Municipal Law § 205-a as delineated in *Kenavan (supra)*.

General Municipal Law § 205-e, as derived from section 205-a, uses virtually identical language and is therefore similarly limited in scope to the violation of statutes, which increase the risks and dangers inherent in police work *(see,* Mem of Assembly Rules Comm, 1992 NY Legis Ann, at 285-286). The issue in this case, therefore, can be stated as, whether the City's failure to comply with statutes cited by plaintiffs, increased the risks inherent in police work generally or in pursuit of suspects specifically, so as to sustain an action pursuant to General Municipal Law § 205-e.

In *Zanghi (supra)* and *Ruocco v New York City Tr. Auth.* (85 NY2d 423), decided with it, the Court dealt, *inter alia,* with claims of common-law negligence advanced by police officers and recognized the existence of the inherent risks officers undertake in pursuing suspects both on foot and in their vehicles. It was noted that police officers are called upon to render assistance to other officers and to respond to the report of crime in a variety of ways. The Court recognized that the primary goal of the officers is to reach the scene quickly and that in doing so "care and caution in the steps taken to reach that location are naturally compromised. The risk that an officer may be injured during the response, due to the loss of footing, a blow out on a tire, or a car collision at an intersection is inherent in police duties" *(Zanghi v Niagara Frontier Transp. Commn., supra,* at 440).

At the core of plaintiffs' argument is the assertion that the defects in the sidewalks in question rendered it more likely that the officers would be injured when they undertook their pursuit of the fleeing suspects. However, the risk of injury "due to the loss of footing", is a risk inherent in the performance of the duties of a police officer, and accordingly, an action for common-law negligence cannot be maintained by police officers injured while en route to a crime scene *(Zanghi v Niagara Frontier Transp. Commn., supra,* at 440). Therefore, where as here, the statutes, on which plaintiffs rely to sustain their General Municipal Law § 205-e causes of action, do not

create any greater duty than that which exists at common law, but merely delineate how the duty is to be fulfilled, it cannot be concluded that the specific violations alleged by the plaintiffs increased inherent risks undertaken by officers when they respond to a call or pursue a suspect. The same risk of injury would have been present whether or not the alleged statutory violations occurred and we conclude, therefore, that the plaintiffs' actions in both cases were properly dismissed.

*Del Casino v City of New Rochelle* (176 AD2d 282) and *Alberti v Eastman Kodak Co.* (204 AD2d 1022, *lv denied* App Div, 4th Dept, Sept. 30, 1994), relied upon by the dissent, are distinguishable. *Del Casino* involved alleged violations of sections of the State Highway Law, which placed affirmative requirements upon the defendant City of New Rochelle, above any common-law duty which existed, as well as violations of provisions of the Charter of the City of New Rochelle. Moreover, it cannot be determined from the memorandum in that matter what requirements were imposed upon the defendant City by its Charter provisions, as the provisions are neither identified nor explained. In *Alberti,* the Court specifically stated that the statute involved was "not a mere codification of common-law nuisance" (204 AD2d, *supra,* at 1022).

Moreover, contrary to the dissent's characterization of our reasoning, we do not "exclude" the provisions of the Charter and Administrative Code relied upon by the plaintiffs; rather we conclude that the provisions do not impose any greater duty upon the City than existed at common law prior to their enactment. We reiterate that none of the provisions relied upon by the plaintiffs herein set out that the City of New York shall be liable to anyone upon a failure to abide them; they merely delineate the rights and responsibilities of the City of New York and the abutting landowners with respect to the City's common-law nondelegable duty to maintain sidewalks and roads. Lastly, the dissent's reliance upon the argument that if the Legislature wished to exclude the subject provisions of the City Charter and Administrative Code it would have done so specifically, ignores the import of the holding in *Kenavan (supra).* There the Court limited the application of General Municipal Law § 205-a pursuant to its

interpretation of the legislative intent, the relevant sections of the Vehicle and Traffic Law involved in *Kenavan* not being specifically excluded by the General Municipal Law § 205-a.

Accordingly, the judgment of Supreme Court, New York County (Harold J. Hughes, J.), entered December 12, 1994, which granted the defendant's motion for summary judgment made at the close of plaintiffs' case and dismissed plaintiffs St. Jacques' action, is affirmed, without costs, and the judgment of the same court and Justice entered December 13, 1994, which granted defendant's motion for summary judgment made at the close of plaintiffs Wiltbanks' case and dismissed that action, is also affirmed, without costs.

Tom, J. (dissenting). Plaintiff Daniel St. Jacques, a New York City police officer, was injured while pursuing a robber in the line of duty when he stumbled and fell due to a broken and defective condition in the sidewalk. Plaintiffs (the officer's wife filed a claim for loss of consortium) commenced the underlying action in February 1990 against the City of New York (the City) asserting common-law negligence and a cause of action under General Municipal Law § 205-e.

During the course of the jury trial, at the close of plaintiffs' case, counsel for both sides stipulated that the City had received notice of the sidewalk defect in question from the Big Apple Pothole & Sidewalk Protection Corporation and conceded that prior to the occurrence, it failed to issue notices of violation to the abutting owner or make repairs to the sidewalk. The City thereafter moved to dismiss the action on the grounds that the common-law claims were barred as a matter of law pursuant to the holding of *Santangelo v State of New York* (71 NY2d 393), and that plaintiffs had no viable claim pursuant to General Municipal Law § 205-e. Justice Hughes agreed with the City and dismissed the complaint.

New York City Police Officer Larry Wiltbank was injured in the same manner as St. Jacques in that he tripped and fell on an allegedly defective sidewalk while chasing a criminal suspect. Justice Hughes granted the City a directed verdict and dismissed Wiltbank's complaint for the same reasons set forth in the St. Jacques' decision. Both police officers appeal the dismissal of the General Municipal Law § 205-e claim only.

The plaintiffs argue herein that General Municipal Law § 205-e* should be afforded a broad interpretation so that an officer can seek recourse against the City for the City's failure to maintain its sidewalks. The City, on the other hand, contends that the statute should be narrowly construed, and that its legislative history indicates it was not meant to cover situations such as the one before us.

The IAS Court, in dismissing both complaints, disagreed with plaintiffs' analysis and held that the Charter and Administrative Code provisions which require the City to maintain its sidewalks did not impose any duty upon the City but, instead, were directed against, and imposed a duty upon, abutting landowners. Justice Hughes also held that Administrative Code of the City of New York § 7-201 (c) (2) (the Pothole Law) was intended to impose an obligation of a prior written notice before a claimant could recover against the City for a violation of the City's *common-law* duty to maintain the sidewalks and was not intended to impose a new statutory duty upon the City.

Plaintiffs maintain that the City violated, *inter alia,* section 2904 of the New York City Charter and Administrative Code of the City of New York §§ 19-152 and 7-201 (c) (2), which impose a nondelegable duty upon the City to maintain its sidewalks in good repair and provide the mechanism by which the City is to carry out its duty. Plaintiffs contend that the foregoing provisions mandate that the City inspect the sidewalks for defects or, upon written notice of same, direct the abutting landowner to repair the sidewalk, if warranted, or perform the repairs itself.

General Municipal Law § 205-e, enacted in July 1989, created a new cause of action for police officers injured in the line of duty and provides for liability: "[I]n the event any

---

* General Municipal Law § 205-e, like its counterpart General Municipal Law § 205-a, was enacted in an attempt to ameliorate the often harsh results of the common-law rule that firefighters, and policemen, were held to have assumed the risks of their profession despite the fact that the owner of the premises on which they were injured was negligent in creating a condition which led to the injury *(see, e.g., Santangelo v State of New York, supra).*

accident, causing injury, death or a disease which results in death, occurs directly or indirectly as a result of any neglect, omission, willful or culpable negligence of any person or persons in failing to comply with the requirements *of any of the statutes, ordinances, rules, orders and requirements of the federal, state, county, village, town or city governments* or of any and all their departments, divisions and bureaus" (§ 205-e [1]; emphasis added).

The obligation to maintain its sidewalks in a reasonably safe condition, and the attendant tort liability for the failure to do so, has always rested with the City *(D'Ambrosio v City of New York,* 55 NY2d 454, 462; *Oeters v City of New York,* 270 NY 364, 368; *Rubin v City of New York,* 211 AD2d 417, 418). The City's duty derives from both the common law as well as from statute. In *Lopes v Rostad* (45 NY2d 617, 623), the Court of Appeals observed that:

"It has long been established that a governmental body, be it the State, a county or a municipality, is under a nondelegable duty to maintain its roads and highways in a reasonably safe condition, and that liability will flow for injuries resulting from a breach of the duty * * *.

*"The source of this duty is not only the common-law, but also statute."* (Emphasis added.)

In holding that a municipality has a nondelegable statutory duty to maintain its streets in good repair, the Court of Appeals in *Lopes (supra,* at 623) cited the following language from Highway Law § 102: " 'The County superintendent * * * shall * * * 1. Have general charge and supervision of the work of constructing, improving, repairing and maintaining all county roads.' "

Similarly, section 2903 (b) (2) of the New York City Charter (the Charter) provides:

"b. Highway operations. The commissioner shall have charge and control of the following functions relating to the construction, maintenance and repair of public roads, streets, highways, parkways, bridges and tunnels * * *

"(2) designing, constructing and repairing of public roads, streets, highways and parkways".

Since the Charter employs almost identical language to that employed by Highway Law § 102, the conclusion can be drawn that the City is under a nondelegable statutory duty to maintain its streets and sidewalks.

In *City of New York v Kalikow Realty Co.* (132 AD2d 481, *affd* 71 NY2d 957), this Court held that section 230 of the New York City Charter (now NY City Charter § 2904 and Administrative Code § 19-152) imposes a nondelegable statutory duty upon the City to maintain its sidewalks in good repair. As this Court held: *"The sole basis for the finding of liability against the city was its statutory duty to maintain the city sidewalks. The language of the letter, supra, however, clearly shows that Kalikow voluntarily assumed the duty to maintain the sidewalk in a safe condition during the course of the planned construction. Although, as the dissent emphasizes, the city had a nondelegable duty to maintain the sidewalk,* it must be emphasized that that duty ran to *Manos." (Supra,* at 482; emphasis added.)

In affirming *Kalikow,* the Court of Appeals stated that: "It bears emphasis that the issue before us is limited to who, as between the City and this property owner, should ultimately pay plaintiff's judgment. *This case in no way affects* either the injured plaintiff, who has already been fully compensated by the City, or *the City's nondelegable duty to maintain its sidewalks, a duty the City concedes.* Nor does our holding countenance the City's breach, as found after trial, of its obligation to maintain its streets in safe condition, or inject any disincentive to performance of that duty." *(City of New York v Kalikow Realty Co., supra,* at 958-959; emphasis added.)

In view of the foregoing, the City's attempt to shift its nondelegable statutory duty to the abutting landowner, an argument which the court below erroneously adopted, must be rejected. The next question, in the answer of which I disagree with the majority, is whether a cause of action pursuant to General Municipal Law § 205-e may be premised on violations of section 2904 of the New York City Charter and Administrative Code § 19-152.

General Municipal Law § 205-e (1) clearly and unambiguously provides that a cause of action may be asserted thereun-

der upon the failure to comply with the requirements of *"any* of the statutes, ordinances, rules, orders and requirements of the federal, state, county, village, town or city governments" (emphasis added). There are absolutely no restrictions or exceptions for claims arising under the Administrative Code or the Charter and since the primary consideration of the court in construing statutory provisions is to ascertain and give effect to the legislative intent through a literal reading of the words and language of the statute itself (McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a]; *Matter of State of New York v Ford Motor Co.,* 74 NY2d 495; *Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.,* 45 NY2d 471, 479-480; *Matter of Albano v Kirby,* 36 NY2d 526, 529-530; *Matter of Allstate Ins. Co. v Libow,* 106 AD2d 110, 114, *affd* 65 NY2d 807), the lack of qualification for the provisions in question is decisive. Further, where the statute in question is clear on its face, and its words "are possessed of a definite and precise meaning", the resort to extrinsic matter, such as its legislative history, is inappropriate *(Matter of Allstate Ins. Co. v Libow, supra,* at 114; *Matter of Yong-Myun Rho v Ambach,* 74 NY2d 318, 322; *see also, Giblin v Nassau County Med. Ctr.,* 61 NY2d 67, 74).

"[T]he plain and obvious meaning of a statute is always preferred to any curious, narrow or hidden sense *that nothing but a strained interpretation of legislative intent would discern. * * *

"[C]ourts may only look behind the words of a statute when the law itself is doubtful or ambiguous." *(Finger Lakes Racing Assn. v New York State Racing & Wagering Bd., supra,* at 479-480 [emphasis added]; *Matter of Yong-Myun Rho v Ambach, supra,* at 322.)

Hence, in light of the clear wording of the statute, there is, in my view, no need to go beyond the unambiguous provisions of the statute, nor is there any support for the assertion that the Charter and Administrative Code provisions in question should be excluded. Indeed, the Second Department has held that a cause of action interposed under General Municipal Law § 205-e may be premised upon a violation of a City Charter provision *(Del Casino v City of New Rochelle,* 176

AD2d 282 [in which a police officer was allowed to maintain an action for injuries sustained due to the City of New Rochelle's failure to properly maintain a footbridge in accordance with the provisions of the New Rochelle City Charter and the Highway Law]), and the Fourth Department has held that a General Municipal Law § 205-e claim may encompass common-law duties (*Alberti v Eastman Kodak Co.,* 204 AD2d 1022, *rearg and lv denied* App Div, 4th Dept, Sept. 30, 1994 [in which the Court held that "(w)e decline to adopt the reasoning * * * that a statute or regulation that merely codifies a common-law duty cannot serve as a predicate for a General Municipal Law § 205-e cause of action."]).

The Court of Appeals, in the recently decided trio of cases captioned *Zanghi v Niagara Frontier Transp. Commn.* (85 NY2d 423), reiterated its holding in *Cooper v City of New York* (81 NY2d 584), that pursuant to the "firefighter rule", police and firefighters may not recover in common-law negligence for line-of-duty injuries which result from risks associated with the particular dangers inherent in that type of employment (*Zanghi v Niagara Frontier Transp. Commn., supra,* at 436).

In *Raquet v Braun,* one of the appeals decided in *Zanghi,* however, the volunteer firefighter, who suffered paralyzing injuries when a wall and canopy roof collapsed, asserted common-law and statutory negligence claims. The Court, in addressing the viability of the plaintiff's claims under General Municipal Law § 205-a (the legislative counterpart to General Municipal Law § 205-e) stated:

"To fall within the protective scope of the statute and defeat a motion to dismiss, a plaintiff seeking recovery under General Municipal Law § 205-a must identify the statute or ordinance with which the defendant failed to comply, describe the manner in which the firefighter was injured, and set forth those facts from which it may be inferred that the defendant's negligence directly or indirectly caused the harm to the firefighter (*Brophy v Generoso,* 137 AD2d 478, 479). * * *

"In *Kenavan v City of New York* (70 NY2d 558, *supra)* * * * [t]he Court rejected the theory—improperly revived by the Appellate Division in this case—that the statutory relief is limited solely to 'violations of fire preventive regulations' and

explained that *the statute authorizes a damage award for firefighters injured in 'premises harboring violations of safety provisions that create hazards additional to those that firefighters already face in their profession' (id.* [emphasis added]).

"Additionally, our statement in *Kenavan* that safety violations 'create hazards additional to those that firefighters already face in their profession' (70 NY2d, at 567, *supra)* was not intended to create an additional pleading requirement for a plaintiff firefighter seeking to establish a section 205-a claim. Rather, through that language we merely meant to point out that safety violations, by their nature, increase the hazards that firefighters would normally face in buildings harboring no such violations." *(Supra,* at 441, 442-443.)

In view of the foregoing broad application given to General Municipal Law § 205-a, I conclude that in the instant matters, plaintiff police officers, who were allegedly injured while pursuing a suspect and were caused to slip and fall on a broken and defective sidewalk which the City failed to maintain pursuant to its statutory obligations, have stated a valid cause of action under General Municipal Law § 205-e as the violations in question " 'create hazards additional to those that [policemen] already face' " *(supra,* at 443).

The majority, in placing reliance on *Kenavan v City of New York* (70 NY2d 558, *supra),* concludes, *inter alia,* that since the provisions of General Municipal Law § 205-e do not create any greater duty than that which exists at common law, "[t]he same risk of injury would have been present whether or not the alleged statutory violations occurred".

The Court of Appeals, in *Zanghi,* however, clarified the holding of *Kenavan* and held that violations that "increase the hazards that firefighters would normally face" *(Zanghi v Niagara Frontier Transp. Commn., supra,* at 443) are actionable and further stated that the Appellate Division had erred in dismissing the General Municipal Law § 205-a claim on the ground that the code violations "did not create any dangers for the firefighters beyond those they would traditionally confront" *(supra,* at 443). I submit that the majority's conclusion is precisely what the Court of Appeals in *Zanghi* held was error, for while a police officer in pursuit always faces the risk of injury, the City's statutory violations herein increased the risk the officer would normally face in his or her profes-

sion and therefore serve as a predicate for General Municipal Law § 205-e liability.

In conclusion, since the City breached a *statutory, nondelegable* duty which increased the risk faced by a police officer pursuing a suspect in the course of the performance of his duties, leading to injury, I conclude that plaintiffs' General Municipal Law § 205-e claims are valid, the complaints should be reinstated and new trials ordered.

I further conclude that there is no legal support for the majority's finding that General Municipal Law § 205-e does not apply to the provisions of the Administrative Code and the Charter in issue because they are codifications of a preexisting common-law duty. If the intent of the Legislature was to exclude the subject provisions of the Administrative Code and the Charter from the application of General Municipal Law § 205-e, it could have done so in clear and plain language, and the all-inclusive term "any" would have been deleted from the statute. General Municipal Law § 205-e provides for no such exception.

SULLIVAN, J. P., ROSENBERGER and ASCH, JJ., concur with Ross, J.; TOM, J., dissents in a separate opinion.

Judgments, Supreme Court, New York County, entered December 12, 1994 and December 13, 1994, affirmed, without costs.