**Martin SHEPHERD and Elizabeth Shepherd, Plaintiffs,**

v.

**Beth N. WERWAISS, National Railroad Passenger Corporation and Alar Management, Defendants.**

**Civil Action No. CV–94–3107.**

United States District Court, E.D. New York.

Dec. 2, 1996.

---

Lawrence Goldhirsch, Weitz & Luxenberg, P.C., New York City, for Plaintiffs.

Ronald E. Joseph, Lori B. Wolmetz, Landman Corsi Ballaine & Ford, New York City, for defendant National R.R. Corp.

Harriet D. Feuer, Alio, McDonough, Jennings & Ritzert, New York City, for defendant Alar Management Co.

*MEMORANDUM AND ORDER*

TRAGER, District Judge:

Plaintiff Martin Shepherd and his wife Elizabeth Shepherd brought a personal injury action against Beth N. Werwaiss,[1] National Railroad Passenger Corp. ("Amtrak") and Alar Management Corp. ("Alar") pursuant to General Municipal Law ("GML") § 205–e in conjunction with the Administrative Code of the City of New York, § 16–118 and the New York City Health Code, § 153.01. Pl.Mem. at 3. Amtrak now brings this motion for summary judgment, claiming that GML § 205–e does not apply in the instant case. Defendant Alar has joined in this motion.

## Background

At the time he suffered the injury forming the basis of this action, Martin Shepherd was a New York City police officer and served as a member of the Violent Predator Task Force. Def. 3g ¶ 1. He had been employed as a police officer since January 3, 1983. *Id.* On the morning of April 29, 1991, Shepherd and his partner assisted a warrant squad team in efforts to execute an arrest warrant on a suspect in Astoria, Queens. *Id.* ¶ 2. When two officers attempted to arrest the suspect in his home, the suspect fled through the back window, whereupon Shepherd commenced chasing him. *Id.* ¶¶ 3, 4. Although plaintiff drew his weapon and ordered him to stop, the suspect continued to flee. Pl.Mem. at 2. During the ensuing chase, which continued along a railroad trestle, Shepherd saw the suspect scale and "go over" a chain link fence. *Id.* Shepherd then climbed and

---

1. Defendant Werwaiss is no longer a party to this action.

jumped off of the six or seven foot fence in pursuit of the suspect. Def. 3g ¶ 5. Shepherd fractured his left ankle when he landed on a steel wheel from a baby carriage or stroller that was covered by an empty baby diaper box. Pl.Mem. at 2. It is not contested that the sidewalk onto which Shepherd fell is not owned by Amtrak, but rather is adjacent to Amtrak property. Def. 3g ¶ 7. Alar is responsible for the maintenance of Amtrak's premises.[2]

## Discussion

The salient issue on this motion for summary judgment is whether Amtrak's alleged violations of the Administrative Code of the City of New York § 16–118 and the New York City Health Code § 153.01 are proper predicates for a GML § 205–e action. In relevant part, the much-amended GML § 205–e now reads:

1. In addition to any other right of action or recovery under any other provision of law, in the event any accident, causing injury, death or a disease which results in death, occurs directly or indirectly as a result of any neglect, omission, willful or culpable negligence of any person or persons in failing to comply with the requirements of any of the statutes, ordinances, rules, orders and requirements of the federal, state, county, village, town or city governments or of any and all their departments, divisions and bureaus, the person or persons guilty of said neglect, omission, willful or culpable negligence at the time of such injury or death shall be liable to pay any officer, member, agent or employee of any police department injured, or whose life may be lost while in the discharge or performance at any time or place of any duty imposed by the police commissioner, police chief or other superior officer of the police department....

3. This section shall be deemed to provide a right of action regardless of whether the injury or death is caused by the viola-

tion of a provision which codifies a common-law duty and regardless of whether the injury or death is caused by the violation of a provision prohibiting activities or conditions which increase the dangers inherent in the work of any officer, member, agent or employee of any police department.[3]

Section 205–e, first enacted in 1989, substantially cabined the common-law firefighter's rule, which had been extended to police officers by the New York Court of Appeals in *Santangelo v. New York,* 71 N.Y.2d 393, 397–98, 526 N.Y.S.2d 812, 521 N.E.2d 770 (N.Y. 1988). The historical firefighter's rule (or defense) precluded firefighters from recovering against "property owners or occupants whose negligence in maintaining the premises occasioned the fires." *Id.* at 397, 526 N.Y.S.2d 812, 521 N.E.2d 770. In 1935, however, the legislature passed GML § 205–a to permit firefighters to sue for damages when they suffered injuries in the line of duty because of a private party's failure to comply with "some statute, ordinance, or rule respecting the maintenance and safety of such premises." *Kenavan v. City of New York,* 70 N.Y.2d 558, 567, 523 N.Y.S.2d 60, 517 N.E.2d 872 (N.Y.1987). In 1989, in response to the *Santangelo* extension of the common-law firefighter's rule to police officers, the legislature enacted § 205–e to allow police officers to recover damages from private citizens when such injuries are due to violations of statutes and ordinances.

In 1992, the legislature amended § 205–e to clarify that police officers, unlike firefighters, could recover for injuries acquired *at any time or place*—not only for injuries due to failure to maintain safe premises. The statement of legislative intent accompanying the 1992 amendment provides that § 205–e should not:

be limited to violations pertaining to the safe maintenance and control of premises. Since our police officers are required to

---

**2.** Alar's position is presumed to be allied with Amtrak's. Plaintiffs were invited to clarify their position with respect to Alar, but failed to articulate an independent cause of action against Alar distinct from those asserted against Amtrak.

**3.** Consideration of recently-added section 3 is warranted in this case because this legislative amendment applies "to all actions commenced or pending on and after" the Governor signed the bill into law on October 9, 1996. S.B. 7303, 219th Leg., 2d. Reg.Sess., (N.Y.1996) (enacted).

confront dangerous conditions under many and varied circumstances, there is a need to ensure that a right of action exists regardless of where the violation causing the injury or death occurs.

*Zanghi v. Niagara Frontier Transp. Comm'n,* 85 N.Y.2d 423, 445, 626 N.Y.S.2d 23, 649 N.E.2d 1167 (N.Y.1995) (quoting § 1 of L.1992, ch. 474).

In the most recent series of amendments enacted October 9, 1996, the legislature abolished the firefighter's rule (or defense) through the § 205 statutory right of action. The legislature: 1) established parity between § 205–a and § 205–e by permitting firefighters, like police officers, to sue for injuries suffered at any time or place; and 2) responded to judicial interpretations of § 205–e by enacting section 3, which, as quoted above, permits suits under statutes regardless of whether they codify a common-law duty or prohibit activities or conditions which increase the dangers inherent in police work.[4]

The ordinances upon which plaintiffs seek to predicate § 205–e liability are § 16–118(2) of the Administrative Code of the City of New York and the New York City Health Code § 153.01. Section 16–118(2) of the Administrative Code, entitled "Littering Prohibited," provides in relevant part:

> Every owner, lessee, tenant, occupant or person in charge of any building or premises shall keep and cause to be kept the sidewalk ... abutting said building or premises free from obstruction and nuisances of every kind, and shall keep said sidewalks ... free from garbage, refuse, rubbish, litter, debris and other offensive material....

Section 16–118(8) further mandates that "any violation of any provision of this section shall constitute an offense punishable by a fine of not less than fifty dollars nor more than two hundred fifty dollars, or by imprisonment not to exceed ten days or both." *Id.* Section 153.01 of the New York City Health Code, also entitled "Littering Prohibited," states that "[n]o person shall litter, sweep, lay or throw any ... garbage, refuse or rubbish of any kind in or upon any street or public place, lot, air shaft, areaway, backyard, court or alley." The introductory notes to Article 153 of the New York City Health Code provide that "the violation of any of the provisions of this Code constitutes a misdemeanor under the City Charter § 558(2) and is punishable by imprisonment up to one year, a fine of not more than five hundred dollars, or both (Penal Law § 1937)."

Two related characteristics of these laws are paramount to a determination of this matter: first, neither ordinance eviscerates the City's nondelegable duty to maintain its sidewalks; and second, neither ordinance imposes civil liability on adjacent landowners for injuries due to noncompliance. These qualities in turn raise two related questions: first, are Amtrak and Alar the appropriate defendants in this matter; and second, should GML § 205–e, a statute designed to create parity and achieve legal fairness for police officers by repealing the firefighter's rule, permit police officers to recover damages against an abutting landowner where a private citizen could not?

■ Addressing each of these questions in turn, the first point to be made is that New York City has a nondelegable duty to maintain its sidewalks. *See City of New York v. Kalikow Realty Co.,* 71 N.Y.2d 957, 958–59, 529 N.Y.S.2d 62, 524 N.E.2d 416 (N.Y.1988) ("This case is no way affects ... the City's nondelegable duty to maintain its sidewalks, a duty the City concedes."). However, the

---

4. In the same bill that codified these amendments to § 205, the legislature formally abrogated the common-law firefighter's rule by adding § 11–106 to the General Obligations Law:

> In addition to any other right of action or recovery otherwise available under law, whenever any police officer or firefighter suffers any injury, disease or death while in the lawful discharge of his official duties and that injury, disease or death is proximately caused by the neglect, willful omission, or intentional, willful

> or culpable conduct of any person or entity, other than that police officer's or firefighter's employer or co-employee, the police officer or firefighter suffering that injury or disease ... may seek recovery and damages from the person or entity whose neglect, willful omission, or intentional, willful or culpable conduct resulted in that injury, disease or death.

S.B. 7303, 219th Leg., 2d Reg.Sess., (N.Y.1996) (enacted).

Court of Appeals recently held that a municipality may delegate this (heretofore termed) nondelegable duty if it enacts an ordinance which explicitly holds abutting landowners directly liable for injuries suffered due to sidewalks in disrepair. *See Hausser v. Giunta*, 88 N.Y.2d 449, 646 N.Y.S.2d 490, 669 N.E.2d 470 (N.Y.1996).[5] According to the Court of Appeals:

Generally, liability for injuries sustained as a result of negligent maintenance of or the existence of dangerous and defective conditions to public sidewalks is placed on the municipality and not the abutting landowner. There are, however, circumstances under which this general rule is inapplicable and the abutting landowner will be held liable. Liability to abutting landowners will generally be imposed where ... a local ordinance or statute *specifically [1] charges an abutting owner with a duty to maintain and repair the sidewalks and [2] imposes liability for injuries resulting from the breach of that duty.*

*Id.* at 452–53, 646 N.Y.S.2d 490, 669 N.E.2d 470 (emphasis added). In *Hausser*, the Court of Appeals held that Long Beach Code § 256 adequately shifted the nondelegable duty. The section provides that "[t]he owner or occupant of lands ... abutting on any street ... shall make, maintain and repair the sidewalk adjoining his lands.... Such owner or occupant ... shall be liable for any injury or damage by reason of omission, failure or negligence to make, maintain or repair such sidewalk." *Id.* at 452, 646 N.Y.S.2d 490, 669 N.E.2d 470 (internal quotation marks omitted). On its face, Long Beach Code § 256 expressly transferred liability for injuries to the abutting landowner.

■ In contrast, the provisions cited by plaintiff clearly fail to impose such liability. Administrative Code § 16–118(8) states merely that violations of the litter provisions will result in a fine or brief imprisonment. New York City Health Code § 153.01 similarly provides for only a fine or imprisonment. Thus these sections fail to shift civil liability from the City to the abutting landowner.[6] Moreover, during public hearings preceding the enactment of Administrative Code § 16–118, then-Mayor Edward I. Koch stated:

It is hoped that this law will marshal public cooperation *in assisting the Department of Sanitation in its efforts to clean City streets.* Public acceptance of the obligations of this law will also enable the Department of Sanitation to concentrate its sweeping efforts in those areas of greatest need, where, due to traffic and population concentrations, cleaning as mandated by this law alone would not be sufficient. In addition, public compliance with this law should offer a valuable tool in improving our image by reducing the amount of litter that gets blown from one curb area to another.

Def.Mem.Ex. E at 2–3 (emphasis added). This discussion makes clear that the statutory purpose was not to impose liability for injuries upon abutting private landowners,

---

5. *Hausser* clarified the confusion as to whether such liability-shifting statutes were permissible under Municipal Home Rule Law § 11(1)(j). *See Hausser*, 88 N.Y.2d at 452–53, 646 N.Y.S.2d 490, 669 N.E.2d 470 ("Municipal Home Rule Law § 11(1)(j) does not prohibit the transfer of a locality's liability to abutting property owners for injuries sustained due to defective sidewalks.").

6. For unknown reasons, defendant Amtrak states that plaintiffs seek to predicate § 205–e liability based upon not only the ordinances cited above, but also on the Rules of the City of New York, Title 16, Department of Sanitation, §§ 6.01–03, entitled Vacant Lots, and the New York City Health Code § 153.19, entitled Duties of owners or persons in charge of premises, as well. *See* Def.Mem. at 4. The addition of these statutory predicates would not alter the outcome in this case because these statutes also fail to shift New

York City's nondelegable duty to maintain its sidewalks to abutting landowners. The Rules of the City of New York § 6.02, Owner Responsibilities and Liabilities, provides that "in the event the owner fails to clean the property ... the Department may enter upon his property, clean or abate the nuisance and charge him for the cost of such services." The punishment for violation of New York City Health Code § 153.19 is identical to that for violation of § 153.01: "[T]he violation of any provisions of this Code constitutes a misdemeanor under the City Charter § 558(2) and is punishable by imprisonment up to one year, a fine of not more than five hundred dollars, or both (Penal Law § 1937)." New York City Health Code Article 143, Introductory Notes. Neither of these laws makes any mention of liability for injuries suffered as a result of noncompliance.

but rather to enlist their assistance in the City's efforts to comply with its nondelegable duty.[7]

In the absence of any statutory reassignment of the duty to maintain sidewalks, liability for injuries resulting from their disrepair remains with the City of New York. Thus, if there is any appropriate defendant to this action, it certainly would be neither Amtrak nor Alar.

■ Appropriate defendant aside, however, Administrative Code § 16–118(2) and Health Code § 153.01 are improper predicates for a § 205–e action because:

> Application of GML § 205–e in this case would grant plaintiff an unprecedented cause of action in tort which is greater than both the one that is available to the general public and which was available to police officers prior to the Court of Appeals' extension of the firefighter's rule to police officers.

Def.Mem. at 8–9. The development of the firefighter's rule, subsequent eviscerations by the New York State Legislature and the judicial response to these statutory changes is quite extensive and complex. But nowhere in this history is there any indication that the statutory cause of action articulated in GML § 205–e should be used to afford police officers *greater* rights than those afforded ordinary citizens. As Governor Pataki stated in appraising the most recent effort to repeal the remnants of the firefighter's rule: "This new law is about fairness. It simply allows our police officers and firefighters their day in court if an injury is caused by a private party." Press Release: "Governor Pataki Signs 'Firefighters Bill.'"

To permit police officers to recover where ordinary citizens could not does significantly more than allow police officers their day in court; it grants them a special remedy where none existed previously. Although it is evident that the legislature has sounded the death knell of the firefighter's rule, in doing so there is no indication that it intended to birth a new category of special rights for police officers and firefighters. Moreover, prior to the New York Court of Appeals' extension of the firefighter's rule to the police in *Santangelo v. New York,* 71 N.Y.2d 393, 526 N.Y.S.2d 812, 521 N.E.2d 770 (N.Y. 1988), no case has been cited where police officers were permitted to recover for damages where ordinary citizens could not. Interpreting GML § 205–e to allow plaintiffs to collect damages here, in effect, would overcompensate for any presumed errors on the part of New York courts in developing and extending the firefighter's rule. Plaintiffs' construction of GML § 205–e, rather than promoting fairness, in fact creates a new inequity. Accordingly, plaintiffs' interpretation of § 205–e is untenable.

This conclusion also finds support from the New York Court of Appeals, which recently provided guidance with regard to the appropriate application of GML § 205–e in *Desmond v. City of New York,* 88 N.Y.2d 455, 646 N.Y.S.2d 492, 669 N.E.2d 472 (N.Y.1996). In *Desmond,* the court wrote that "neither [§ 205–a affecting firefighters nor § 205–e affecting police officers] can reasonably be applied literally in accordance with its broad language." *Id.* at 463, 646 N.Y.S.2d 492, 669 N.E.2d 472. The Court of Appeals further articulated that:

> Section 205–e was not enacted to give police officers an unrestricted right to recover for all negligently caused line-of-duty injuries. Nor was it intended to give police officers a right to sue for breaches of any and all governmental pronouncements of whatever type and regardless of how general or specific those pronouncements might be. Rather, the 1989 enactment was

---

7. *See Madonna v. American Airlines, Inc.,* 82 F.3d 59, 63 (2d Cir.1996) (finding that sections of the Administrative Code mandating the dimensions and construction of curbs do not " 'set out that the defendant shall be liable to anyone upon a failure to abide' by [them]." and " 'merely delineate the rights and responsibilities of [the City] and the abutting landowners with respect to the [City's] common law nondelegable duty to maintain sidewalks and roads' ") (quoting *St.*

*Jacques v. City of New York,* 215 A.D.2d 75, 633 N.Y.S.2d 97, 101 (App.Div. 1st Dept.1995), *aff'd,* 88 N.Y.2d 920, 646 N.Y.S.2d 787, 669 N.E.2d 1109 (N.Y.1996)). Although the legislature's 1996 amendments statutorily overruled the *St. Jacques* court's threshold test of whether the § 205–e statutory predicates increase a common-law duty or increase the risks inherent in police work, *St. Jacques,* 633 N.Y.S.2d at 101, this has no bearing on the accuracy of the quoted dicta.

intended to provide police officers with an avenue of recourse 'where injury is the result of negligent noncompliance with well-developed bodies of law and regulation' which 'impose clear duties.' *Id.* at 463–64, 646 N.Y.S.2d 492, 669 N.E.2d 472 (emphasis added) (quoting Mem. of State Executive Dept., reprinted in 1989 McKinney's Session Laws of N.Y. at 2140, 2141). Although *Desmond* was decided prior to the legislature's recent amendment to § 205–e, in the Governor's Memorandum approving the bill [filed with Senate Bill Number 7303–A], Governor Pataki found that "[t]he bill ... does not overturn the ruling in *Desmond.*" Gov.'s Mem., Approval No. 104 at 3.

Because the Court of Appeals spoke of "well-developed bodies of law" imposing "clear duties" as predicates for § 205–e liability, there is little doubt that it would hesitate to include litter laws within the ambit of that category. Administrative Code § 16–118 and Health Code § 153.01 merely address the aesthetic infelicity, or possibly the health hazards, of garbage-strewn sidewalks and attempt to enlist the support of the public, including adjacent landowners, in the City's efforts to keep sidewalks free from clutter.

Moreover, analysis of § 205–e case law reveals that such actions are virtually always brought in conjunction with statutes relating to some form of safety consideration. *See, e.g., Zanghi v. Niagara Frontier Transp. Comm'n,* 85 N.Y.2d 423, 443, 626 N.Y.S.2d 23, 649 N.E.2d 1167 (N.Y.1995) (permitting a § 205–a action predicated on violations of building code safety provisions, noting that "[t]he courts of this State have long recognized the relationship between the need for structural integrity of buildings and the prevention of fire or collapse. In fact ... the Legislature declared that it is the policy of this State to 'recognize that fire prevention and fire prevention codes are closely related to the adequacy of building construction codes' "); *Hoehn v. Consolidated Edison of*

*N.Y.,* 205 A.D.2d 734, 613 N.Y.S.2d 700, 701 (N.Y.App.Div.2d Dept.1994) (permitting a § 205–e action in conjunction with rules of the Department of Transportation which discuss the proper securing of plating over excavation sites, where police officer brought an action against a utility when he injured his foot while attempting to move a steel plate back into its proper position over an excavation site); *Antico v. Richmond Housing Assoc.,* 196 A.D.2d 853, 602 N.Y.S.2d 179, 180 (N.Y.App.Div.2d Dept.1993) (permitting a § 205–e action in conjunction with safety requirements to be done during building or excavation operations by those performing such operations when police officer Ignacious Antico sustained injuries when he tripped over debris and fell while pursuing a suspect into a construction site); *Costantini v. Benedetto,* 190 A.D.2d 888, 593 N.Y.S.2d 117, 118 (N.Y.App.Div.3d Dept.1993) (permitting a § 205–e claim in conjunction with non-specifically pleaded violations of Vehicle and Traffic Laws where police officer was injured as a result of defendant striking a utility pole); *Clark v. DeJohn,* 164 Misc.2d 107, 623 N.Y.S.2d 727, 730 (N.Y.Sup.Ct.1995) (permitting a § 205–e based on violation of the Vehicle and Traffic Law pertaining to safe operation of a motor vehicle, where police officer was injured by an automobile that struck him as he was helping a tow truck operator dislodge a car from a guardrail).[8]

While all of these § 205–e actions were predicated on statutes that relate directly to ensuring safety, the litter laws cited by plaintiffs relate only to sanitation and beautification. There is no indication that these statutes were designed to prevent individuals from tripping over garbage, only that cleaning up litter would improve the city's image and possibly health. Moreover, while the statutory predicates in the cases cited above delineate "well-developed bodies of law and regulation which impose clear duties," *Desmond,* 88 N.Y.2d at 464, 646 N.Y.S.2d 492, 669 N.E.2d 472, relating to safety, the statu-

---

8. Although in *Zanghi v. Niagara Frontier Transp. Comm'n,* 85 N.Y.2d 423, 445, 626 N.Y.S.2d 23, 649 N.E.2d 1167 (N.Y.1995) (quoting § 1 of L.1992, ch. 474), the Court of Appeals found that "this section [205–e] should no longer 'be limited to violations pertaining to the safe maintenance

and control of premises,' " here the court was emphasizing that because of § 205–e's application to police officers whose work takes them places where firefighters never venture forth, statutory predicates need not relate to premises, *not* that such predicates need not relate to safety.

tory predicates asserted here utterly fail in this respect.[9]

In sum, Amtrak and Alar are not the proper defendants in the case at bar because the statutes asserted by plaintiffs fail to shift liability for the City's nondelegable duty to maintain its sidewalks to the abutting landowner. Moreover, the application of GML § 205–e urged by plaintiffs overreaches the remedial purposes of the statute because it goes beyond the fairness of allowing police officers the same rights as private citizens to sue and reap damage awards, and instead would permit police officers special treatment, if not a windfall. For these reasons, defendants' motion for summary judgment should be granted.

Accordingly, defendants' motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment in accordance with these instructions and close the case.

SO ORDERED.

---

9. Initially, plaintiffs additionally sought relief under common-law negligence, but voluntarily withdrew that claim on January 29, 1996 because they were barred by the common-law firefighter's rule. *See* Letter, dated January 29, 1996. It would seem that in light of the provisions of newly-enacted General Obligations Law § 11–106, a common law claim here would not be barred per se, but for the reasons discussed above, Amtrak violated no common law duty owed the plaintiffs.