OPINION OF THE COURT
Thomas V. Polizzi, J.
Plaintiff, Anthony Ciervo, commenced this action to recover *171 for injuries sustained as a result of the negligence of the defendant, the City of New York, in "negligently and carelessly” permitting the sidewalk, in front of premises 84-05 107th Street, County of Queens, City and State of New York, to become and remain in an unsafe and dangerous condition. Plaintiff, Madeline Ciervo, sued for loss of consortium.
Prior to the commencement of the trial defendant advised both the plaintiff and the court that it intended to request an extension of the "firefighter’s rule” to include sanitation workers and that predicated upon the application of the rule a motion would be made to dismiss the action. It was suggested by the court, and agreed to by the attorneys for plaintiff and defendant, that liability be tried first. In the event the jury rendered a verdict in favor of the plaintiff, defendant’s motion would be entertained and the attorneys would be afforded an opportunity to submit memoranda of law in support and in opposition thereto.
PACTS
Plaintiff was hired by the Department of Sanitation in 1980 and remained in its employ until 1993. In January 1992 he was assigned to garbage collection duty in Richmond Hill, Queens County, specifically Route 3, which covered an area of 25 to 30 blocks. He was part of a two-man team working with a rear-loader truck. He and his partner, Thomas Walsh, would rotate driving and loading. On July 14, 1992, while working as a loader collecting garbage along 107th Street, plaintiff fell on a defective sidewalk in front of premises 84-05 107th Street. Plaintiff was walking south from Park Lane to Jamaica Avenue, carrying two light bags of garbage in one hand to the truck, when he stepped over the raised lip of a concrete slab into a hole in said slab, causing him to fall and sustain severe personal injuries which ultimately led to his retirement. He is presently receiving a disability retirement benefit. Notice of the defective condition at that site had twice been given to the City of New York by Big Apple Pothole and Sidewalk Protection Corp. on September 24,1991 and June 4,1992 respectively.
At the conclusion of the liability phase of this bifurcated trial the jury determined that the defendant was 83% negligent and plaintiff 17% comparatively negligent. Defendant moved, inter alia, to set aside the verdict in that this court should extend the "firefighter’s rule” to apply to sanitation employees thus barring this action and precluding plaintiff’s recovery for injuries sustained which plaintiff, as an employee of the *172 Department of Sanitation, was expected to assume as part of his duties.
Decision was reserved and the action was stayed pending a determination of the motion.
DECISION
As succinctly stated by Judge Titone: "In Cooper v City of New York (81 NY2d 584) we held that, pursuant to the firefighter rule, police and firefighters may not recover in common-law negligence for line-of-duty injuries resulting from risks associated with the particular dangers inherent in that type of employment * * * [T]he firefighter rule precludes a police officer or firefighter from recovering in tort when the performance of his or her duties increased the risk of the injury happening, and did not merely furnish the occasion for the injury.” (Zanghi v Niagara Frontier Transp. Commn., 85 NY2d 423, 436.)
The courts have continued the application of the bar grounded on the public policy against awarding damages to firefighters and police officers for hazards "that create a need for their services” and for which they are hired, specially trained and compensated to confront (Santangelo v State of New York, 71 NY2d 393, 397).
The "determinative factor” in the application of the firefighter’s rule is "whether the injury sustained is related to the particular dangers which police officers [and firefighters] are expected to assume as part of their duties” (Cooper v City of New York, supra, at 590). "[T]hat necessary connection is present where the performance of the police officer’s or firefighter’s duties increased the risk of the injury happening, and did not merely furnish the occasion for the injury. In other words, where some act taken in furtherance of a specific police or firefighter function exposed the officer to a heightened risk of sustaining the particular injury, he or she may not recover damages for common-law negligence.” (Zanghi v Niagara Frontier Transp. Commn., supra, at 439.)
Over a period of years the rule has been refined and applied in actions commenced by firefighters and police officers alike. Santangelo was applied to preclude recovery of a policeman injured in an explosion while investigating a report of a terrorist bomb (Pascarella v City of New York, 146 AD2d 61, lv denied 74 NY2d 610); Santangelo barred the claim of police officers injured in apprehending a criminal suspect (Buckley v City of New York, 176 AD2d 207, lv denied 79 NY2d 757); the "fire *173 fighter’s rule” barred a fireman’s claim for injuries sustained while performing traffic control duties in connection with firefighting activities going on nearby (Wulforst v Hughes, 216 AD2d 383); Santangelo precluded recovery and the action was dismissed where a police officer was injured while replacing flares during traffic duty (Smullen v City of New York, 214 AD2d 508, lv denied 86 NY2d 705); the rule was again applied where plaintiff, a firefighter, while fighting a fire, fell from an unsecured ladder and was injured (Castellano v City of New York, 213 AD2d 442, lv denied 86 NY2d 702) and a police sergeant’s action for injuries sustained when he tripped and fell on an uneven sidewalk while running back to his RMP to respond to a "priority run”, was dismissed by the application of Santangelo. (Corbisiero v City of New York, NYLJ, Aug. 25, 1995, at 30, col 3 [Sup Ct, Kings County].) In Cottone v City of New York (206 AD2d 345), an action by a police officer injured when he tripped and fell on a defective sidewalk as he was in pursuit of a youth was dismissed. In Sciarrotta v Valenzuela (182 AD2d 443) a police officer was injured by a motor vehicle while returning to his post after giving directions to a motorist. His action was dismissed because he never removed himself from the scope of duty for which he was trained and compensated.
In the instant action, plaintiff voluntarily chose to be a member of that group of "individuals who elect to join the uniformed services * * * with the knowledge of the dangers attendant upon those occupations and the distinct possibility that they might be hurt in the course of their employment” (Pascarella v City of New York, supra, at 69; see, Buckley v City of New York, supra, at 208, citing Santangelo v State of New York, supra). The risks inherent in the duties to be performed as a sanitation worker have been recognized by the City of New York by providing for added benefits to those injured in the line of duty.
Plaintiff testified that he had been given driver’s training on Rikers Island learning both the operation of a truck and the duty of a loader. He had passed a qualifying examination which consisted of carrying garbage bags, lifting metal containers and running through an obstacle course to test his agility, visual acuity, speed and coordination under a time constraint.
He further testified that his duty as a loader encompassed collecting and carrying garbage under varied and different conditions including but not limited to adverse weather and dangerous roads and sidewalks. He is expected to walk on *174 smooth roadways, rough streets, cracked and broken sidewalks, broken curbs and uneven sidewalk panels; in rain, sleet or snow; on wet, slippery, frozen or icy streets and sidewalks, shovelled or unshovelled, plowed or unplowed; to collect garbage placed on mounds of snow; to carry bags or pails of garbage around obstacles such as trees, hedges, bushes, parked and double-parked vehicles. Other risks concomitant with duties as a sanitation worker include getting cut or poked with jagged sharp objects such as glass, plastic or metal, and although plaintiff testified he never worked the night shift, admittedly, all the aforementioned risks would be enhanced when working at night under minimal lighting conditions.
It is undisputed that should a sanitation worker get injured while in the performance of his or her duties, as did plaintiff in the instant action, he or she would achieve a Line of Duty Injury (LODI) status. Under the LODI designation an employee has unlimited sick leave and is paid his or her full base salary while unable to work. In addition, all health insurance benefits would continue and should he or she be found to be disabled from returning to work, he or she, as plaintiff herein, would be entitled to receive a tax-free disability retirement pension based on a percentage of his or her preaccident income.
This court finds that the "firefighter’s rule” should be extended to include sanitation workers. The risk of injury due to a defective sidewalk is inherent in the performance of the duties of a sanitation employee and, accordingly, an action for common-law negligence should be precluded. We have reached a point in time that the question should not be whether in the performance of his or her duties the risk of injury was increased or heightened but rather whether the risk of injury was inherent in the performance of his or her duties. To paraphrase Judge Kaye in Santangelo v State of New York (71 NY2d 393, 397-398, supra), here the anomaly of permitting recovery by a sanitation worker would be particularly evident: allowing recovery against the City of New York for injuries incurred while in the performance of his or her duties would result in the payment of damages by the public for injuries sustained by an employee who is employed to deal with such situations, who elected employment with knowledge of the inherent danger and who has been given added benefits for said danger.
Accordingly, defendant’s motion to set aside the verdict and dismiss the complaint is granted.