*436
 
 OPINION OF THE COURT
 

 Titone, J.
 

 In
 
 Cooper v City of New York
 
 (81 NY2d 584), we held that, pursuant to the firefighter rule, police and firefighters may not recover in common-law negligence for line-of-duty injuries resulting from risks associated with the particular dangers inherent in that type of employment. These three appeals require us to determine the scope of this bar to recovery. We conclude that the firefighter rule precludes a police officer or firefighter from recovering in tort when the performance of his or her duties increased the risk of the injury happening, and did not merely furnish the occasion for the injury. Applying that test in each of these cases before us, we hold that all three plaintiffs are barred from recovering on their common-law negligence claims. In
 
 Raquet v Braun,
 
 however, we hold that the plaintiff firefighters’ statutory claims pursuant to General Municipal Law § 205-a should be reinstated.
 

 I. Background
 

 In
 
 Zanghi v Niagara Frontier,
 
 plaintiff Police Officer Zanghi, who had been assigned to the Greyhound Bus Terminal during a bus driver strike, was injured when he slipped and fell on a snow-covered metal plate as he was approaching a picketer who was packing snowballs, presumably to throw at departing buses. Plaintiff, and his wife derivatively, sued defendants Niagara Frontier Transportation Commission, Niagara Frontier Transit Authority, the owner of the property,
 
 [1]
 
 and Greyhound, its tenant, on a negligence theory, alleging specifically that defendants failed to protect him from a "hidden hazard” on the premises — the metal plates rendered slippery by the snow.
 

 
 *437
 
 In
 
 Raquet v Braun,
 
 Volunteer Firefighter Mitchell Spoth died and Volunteer Firefighter Frank Raquet was paralyzed from injuries sustained when the canopy roof on a building addition and a portion of the addition’s masonry wall collapsed during a blaze in November 1984. Alleging common-law and statutory negligence claims, the Raquet and Spoth plaintiffs sued defendants Leonard Zane, the owner of the building, and the contractors Zane had hired in 1972 to design and construct the addition, including defendants Carol Braun, a professional engineer, J.M. Braun Builders, the contractor who erected the canopy roof, and defendant Benito Olivieri, individually and doing business as Mason Construction, Inc., the mason who constructed the addition’s exterior wall. Specifically, plaintiffs alleged that all defendants were negligent because the building was not constructed in compliance with the approved plans and standard procedure. According to plaintiffs, the resulting defects in the structure caused the building to abnormally collapse outward instead of inward, leading to the death and injury of the two firefighters who were positioned on the street. The statutory claims were brought pursuant to General Municipal Law § 205-a, based on all defendants’ alleged violations of the State Building Construction Code and the Town of Clarence Code. Included in the General Municipal Law cause of action was the allegation that defendant Leonard Zane failed to obtain a certificate of occupancy for the expanded building as required by the building permit
 
 (see,
 
 Town of Clarence Code § 30-78 [A]).
 

 In the third case,
 
 Ruocco v New York City Tr. Auth.,
 
 two police officers, plaintiffs Robert Ruocco and Michael Falcone, were injured when they fell while rushing down a flight of stairs leading into the subway in response to a radio call for assistance from another officer. After they fell, the officers noticed that the stairs were wet and that an employee of the New York City Transit Authority (NYCTA) was standing at the bottom of the stairs with a mop and pail of water. Plaintiffs, and Josephine Falcone derivatively, sued defendant NYCTA in common-law negligence. Specifically, plaintiffs alleged that defendant failed to properly maintain the subway stairway, "which was cracked, worn, uneven, dirty and wet” at the time of the accident, and failed to warn of the danger.
 

 All three sets of defendants moved to dismiss the respective complaints against them on the ground that the common-law negligence action was barred by the "firefighter rule.” In each
 
 *438
 
 of the cases, the respective trial courts denied the defendants’ motions, citing the "separate and apart” exception to the firefighter rule, which would permit a common-law negligence action to go forward if the conduct causing the injury was independent of the conduct for which the officers and firefighters had been summoned. In
 
 Raquet,
 
 the trial court additionally declined to dismiss the statutory claims, specifically rejecting the argument of defendants Braun, J.M. Braun Builders, and Olivieri that General Municipal Law § 205-a claims could only be brought against owners or occupants of the premises, and not against architects or contractors who worked on the premises years prior to the fire and collapse of the structure.
 

 The rulings on the common-law claims were reversed by the Appellate Division in each case on the ground that the "separate and apart” exception had been rejected by this Court in
 
 Cooper v City of New York
 
 (81 NY2d 584,
 
 supra).
 
 The uniform conclusion was that all of the common-law negligence claims were barred by the firefighter rule because the injuries were caused by the particular types of risks that the respective police officers and firefighters had assumed as part of their duties. Additionally, in
 
 Raquet v Braun,
 
 the Appellate Division dismissed the statutory claims against all defendants, holding that violations of building codes do not give rise to liability pursuant to General Municipal Law § 205-a because they do not " 'create hazards additional to those that firefighters already face in their profession’
 
 (Kenavan v City of New York,
 
 [70 NY2d 558,] 567).” (201 AD2d, at 911.)
 

 We affirm the dismissal of the negligence claims in all three cases. We modify in
 
 Raquet
 
 by reversing and reinstating the statutory claims against defendant Leonard Zane, and otherwise affirm the dismissal of the common-law negligence claims.
 

 II. Common-Law Negligence Claims
 

 The "firefighter’s rule,” a product of this State’s long-standing common law, precludes firefighters and police officers from recovering damages for injuries caused by "negligence in the very situations that create the occasion for their services”
 
 (Santangelo v State of New York,
 
 71 NY2d 393, 397). The rule is applied to bar common-law negligence claims where "the injury sustained is related to the particular dangers which police officers [and firefighters] are expected to assume as part
 
 *439
 
 of their duties”
 
 (Cooper v City of New York,
 
 81 NY2d 584, 590,
 
 supra).
 

 The rationale for applying the firefighter rule has evolved from the initial theory that public safety officers, as licensees entering upon the land, took the property as they found it. With that rationale undermined by
 
 Basso v Miller
 
 (40 NY2d 233), subsequent cases retained the firefighter rule by reliance on the doctrine of assumption of risk — i.e., that persons who accept employment as firefighters or police assume the risks of fire-related or crime-fighting-related injuries, including the risk that property owners and occupants may negligently maintain their premises
 
 (McGee v Adams Paper & Twine Co.,
 
 26 AD2d 186, 190,
 
 affd
 
 20 NY2d 921). Continued application of the bar is presently grounded on the public policy against awarding damages to firefighters and police for hazards "that create a need for their services” and which they are hired, specially trained and compensated to confront
 
 (Santangelo v State of New York,
 
 71 NY2d, at 397,
 
 supra).
 

 In an apparent effort to abate the harsh effects of the firefighter rule, some courts in this State created an exception to the bar of common-law negligence claims where the negligent act causing the injury was "separate and apart” from the act occasioning the need for the officer’s services
 
 (see, e.g., Starkey v Trancamp Contr. Corp.,
 
 152 AD2d 358, 361). As the Appellate Division in each of the cases before us correctly stated, however, that exception was rejected by this Court in
 
 Cooper v City of New York
 
 (81 NY2d 584, 590,
 
 supra).
 

 In
 
 Cooper,
 
 this Court explained that the "determinative factor” in applying the firefighter rule’s bar is "whether the injury sustained is related to the particular dangers which police officers [and firefighters] are expected to assume as part of their duties”
 
 (id.,
 
 at 590). In these three cases we are essentially asked to define when the requisite "connection” exists between the plaintiff’s injury and the special hazards associated with police and fire duties
 
 (see, id.,
 
 at 591). We hold that that necessary connection is present
 
 where the performance of the police officer’s or firefighter’s duties increased the risk of the injury happening, and did not merely furnish the occasion for the injury.
 
 In other words, where some act taken in furtherance of a specific police or firefighting function exposed the officer to a heightened risk of sustaining the particular injury, he or she may not recover damages for common-law negligence. By contrast, a common-law negli
 
 *440
 
 gence claim may proceed where an officer is injured in the line of duty merely because he or she happened to be present in a given location, but was not engaged in any specific duty that increased the risk of receiving that injury. For example, if a police officer who is simply walking on foot patrol is injured by a flower pot that fortuitously falls from an apartment window, the officer can recover damages because nothing in the acts undertaken in the performance of police duties placed him or her at increased risk for that accident to happen. On the other hand, if an officer is injured by a suspect who struggles to avoid an arrest, the rule precludes recovery in tort because the officer is specially trained and compensated to confront such dangers.
 

 Applying the pertinent principles to the cases before us, we conclude that the common-law negligence claims in all three cases were properly dismissed. In
 
 Zanghi,
 
 which involved the police officer who slipped on the snow-covered metal plate, the officer’s own trial testimony established that he was focused solely on quickly reaching the picketer who was packing the snowball. Thus, the emergent circumstances exposed plaintiff Zanghi to the risk of injury from slipping on the plate concealed by patches of snow — a risk similar to that faced by the police officers in
 
 Cooper,
 
 who drove in excess of the speed limit and without regard for the attendant weather and lighting conditions. Accordingly, the risk of slipping while approaching the strikers was one of the particular risks of employment that plaintiff Zanghi was compensated to confront.
 

 Likewise, injury to a firefighter due to the collapse of a burning building is one of the particular risks firefighters are asked to brave by their employment. Without doubt, the performance of the firefighting duties by plaintiffs Spoth and Raquet in
 
 Roquet v Braun
 
 increased the risk of being injured by the collapse of the roof and exterior wall.
 

 Also, police officers are commonly called to render assistance to other officers, and may respond in a variety of ways. The primary goal of the officers is to reach the fellow servant quickly and to render assistance; care and caution in the steps taken to reach that location are naturally compromised. The risk that an officer may be injured during the response, due to the loss of footing, a blow out on a tire, or a car collision at an intersection is inherent in police duties. Thus, the officers in
 
 Ruocco,
 
 who were rushing down stairs to reach a co-worker in
 
 *441
 
 need of assistance, were at an increased risk of injury precisely because of the nature of the duty they were performing —responding to a call for backup — and are barred from recovering damages for common-law negligence by the firefighter rule.
 

 III. General Municipal Law § 205-a Claims
 

 General Municipal Law § 205-a creates a right of action for firefighters or representatives of deceased firefighters where the "negligence of any person * * * in failing to comply with the requirements of any of the statutes, ordinances, [or] rules * * * of the federal, state * * * or [local] governments” directly or indirectly caused the firefighter’s injury or death during the discharge of his or her duty. The statute provides that "the person or persons guilty of said * * * negligence
 
 at the time of such injury or death
 
 shall be liable to pay” the firefighter or surviving heirs a specified sum of money
 
 (id.
 
 [emphasis supplied]). This remedial section of the General Municipal Law was enacted to ameliorate the harsh effects of the firefighter rule’s bar to recovery in common-law negligence by imposing "liability in any case where there is any practical or reasonable connection between a [statutory or code] violation and the injury or death of a fire[fighter]”
 
 (McGee v Adams Paper & Twine Co.,
 
 26 AD2d 186, 195,
 
 affd
 
 20 NY2d 921,
 
 supra).
 
 To fall within the protective scope of the statute and defeat a motion to dismiss, a plaintiff seeking recovery under General Municipal Law § 205-a must identify the statute or ordinance with which the defendant failed to comply, describe the manner in which the firefighter was injured, and set forth those facts from which it may be inferred that the defendant’s negligence directly or indirectly caused the harm to the firefighter
 
 (Brophy v Generoso,
 
 137 AD2d 478, 479).
 

 The Raquet and Spoth plaintiffs allege that they are entitled to recover under General Municipal Law § 205-a because defendants’ violations of the State and Town of Clarence Building Codes resulted in structural defects in the addition, which in turn caused its canopy roof and masonry wall abnormally to collapse outward onto the firefighters who were stationed in the street approximately 15 feet from the building. According to plaintiffs’ expert, had the canopy roof on the addition been properly connected to the roof of the main building, the canopy would have collapsed inward along with
 
 *442
 
 the main roof, which had collapsed approximately 20 minutes earlier.
 

 Specifically, plaintiffs allege that defendant owner and contractors violated New York State Building Construction Code § C 304-5 (now State Uniform Fire Prevention and Building Code 9 NYCRR 803.5) because the addition did not resist the overturning force created by the improper attachment of the canopy roof to the masonry wall without connecting it to the main roof. Plaintiffs also allege that defendant owner and defendant contractors, as agents of the owner, violated New York State Building Construction Code § C 304-9 (b) (now 9 NYCRR 803.9 [b]) (minimal impact requirements); § C 401-8 (now 9 NYCRR 770.7) (excessive extension of canopy); and § C 401-9 (now 9 NYCRR 770.8) (improper use of combustible materials in canopy). Citing defendant contractors’ failure to adhere to the building plans, plaintiffs claim that the owner and his contracting agents violated the Town of Clarence Building Code § 30-77 (A) and (B), which together require that a building permit be issued prior to construction and provide that the failure to build in accordance with the approved plans renders the permit null and void. Plaintiffs claim that defendant Zane, as owner of the premises, and the Carpet Factory defendants, as tenants, violated Town of Clarence Code § 30-78 (A) by occupying the building without a certificate of occupancy. In sum, plaintiffs contend that they have properly pleaded a claim pursuant to General Municipal Law § 205-a because the violations of the aforementioned codes created the danger of outward collapse which in turn resulted in the injury and death of the respective firefighters. We agree.
 

 The Appellate Division erred in dismissing the section 205-a claims on the grounds that the alleged building code violations "relate[ ] only tangentially, if at all, to fire prevention” and would not " 'create hazards additional to those that firefighters already face in their profession’ ”. (201 AD2d, at 912.) First, this Court has already rejected the conclusion, implicit in the Appellate Division’s holding, that only violations of fire-preventive statutes or ordinances trigger section 205-a liability. In
 
 Kenavan v City of New York
 
 (70 NY2d 558,
 
 supra),
 
 we traced the history of the statute and concluded that it provided a remedy for the negligent "fail[ure] to comply with the requirements of some statute, ordinance, or rule
 
 respecting the maintenance and safety of such
 
 premises”
 
 (id.,
 
 at 567 [emphasis added]). The Court rejected the theory—
 
 *443
 
 improperly revived by the Appellate Division in this case— that the statutory relief is limited solely to "violations of fire preventive regulations” and explained that the statute authorizes a damage award for firefighters injured in "premises harboring violations of
 
 safety
 
 provisions that create hazards additional to those that firefighters already face in their profession”
 
 (id.
 
 [emphasis added]).
 

 Additionally, our statement in
 
 Kenavan
 
 that safety violations "create hazards additional to those that firefighters already face in their profession” (70 NY2d, at 567,
 
 supra)
 
 was not intended to create an additional pleading requirement for a plaintiff firefighter seeking to establish a section 205-a claim. Rather, through that language we merely meant to point out that safety violations, by their nature, increase the hazards that firefighters would normally face in buildings harboring no such violations. Accordingly, the Appellate Division erred in dismissing the section 205-a cause of action on the ground that the building code violations did not create any dangers for the firefighters beyond those they would traditionally confront.
 

 Contrary to the Appellate Division’s conclusion, the alleged building code violations may indeed create firefighting hazards upon which section 205-a liability may be based. The courts of this State have long recognized the relationship between the need for structural integrity of buildings and the prevention of fire or collapse
 
 (People ex rel. Duryea v Wilber,
 
 198 NY 1;
 
 People ex rel. Van Beuren v Miller,
 
 161 App Div 138). In fact, in enacting the Uniform Fire Prevention and Building Code, the Legislature declared that it is the policy of this State to "recognize that fire prevention and fire prevention codes are closely related to the adequacy of building construction codes, that the greatest portion of a building code’s requirements are fire safety oriented, and that fire prevention and building construction concerns should be the subject of a single code” (Executive Law § 371 [2] [b] [2]). Clearly, violations of building codes designed, for example, to avert a collapse, to slow the spread of fire, or to ensure safe passage create hazards that are equally threatening to firefighters as those violations relating to fire prevention codes. So long as the plaintiff also establishes the necessary connection between the violation and the injury
 
 (see, McGee v Adams Paper & Twine Co.,
 
 26 AD2d 186, 195,
 
 affd
 
 20 NY2d 921,
 
 supra),
 
 violations of building code safety provisions provide a sound predicate for General Municipal Law § 205-a liability.
 

 
 *444
 
 The
 
 Roquet
 
 plaintiffs have met their burden of defeating a motion for summary judgment dismissing the statutory claims. The affidavit of plaintiffs’ expert establishes that the building’s outward collapse allegedly caused by defendants’ failure to comply with the aforementioned New York State and Town of Clarence Building Codes enhanced the risk of injury from collapse for the firefighters, who were stationed
 
 outside
 
 the burning building at a distance apparently considered reasonably safe by industry standards. Since the structural defects may have caused the abnormal collapse, which in turn caused the injury and death of the respective firefighters, the necessary nexus between the violation and the injury has been sufficiently established to defeat defendants’ motion for summary judgment.
 

 IV. Those Liable Under General Municipal Law § 205-a
 

 Having concluded that the building code violations alleged were of the type contemplated by General Municipal Law § 205-a, we are left to determine which classes of defendants may be held liable. Noting that General Municipal Law § 205-a provided a remedy for premises-related liability, in
 
 Kenavan v City of New York
 
 (70 NY2d 558,
 
 supra),
 
 this Court concluded that section 205-a liability may be properly asserted only against property owners or others having control of the premises where the firefighting takes place, despite the broad language in the statute referring to the negligence of "any person or persons” which directly or indirectly causes injury to a firefighter.
 

 That the Legislature intended section 205-a liability to be asserted only against those having control over the premises is supported by the legislative history accompanying the enactment of General Municipal Law § 205-e and its amendments, which established the statutory counterpart for police officers injured by the negligent failure to comply with State or local statutes or ordinances. According to a memorandum of the State Executive Department issued when section 205-e was enacted in 1989 (L 1989, ch 346), the purpose of the bill was to give police officers the same right of action enjoyed by firefighters "where injury is the result of negligent non-complionce with * * * regulation^] that apply to the
 
 maintenance of premises
 
 * * * [and] impose clear duties on
 
 property owners
 
 [that] are intended to benefit firefighters, police officers and any other person who may enter upon premises subject to
 
 *445
 
 regulation” (1989 McKinney’s Session Laws of NY, at 2140, 2141 [emphasis added]). In 1992, section 205-e was amended, however, to permit police officers to recover for injuries sustained "while in the discharge or performance
 
 at any time or place
 
 of any duty imposed by the police commissioner” (L 1992, ch 474, §2 [amended by addition of emphasized language]). The statement of legislative intent accompanying the bill states that liability pursuant to this section should no longer "be limited to violations pertaining to the safe maintenance and control of premises. Since our police officers are required to confront dangerous conditions under many and varied circumstances, there is a need to ensure that a right of action exists regardless of where the violation causing injury or death occurs” (L 1992, ch 474, § 1, reprinted in McKinney’s Cons Laws of NY, Book 23, General Municipal Law § 205-e, Historical and Statutory Notes, 1995 Cum Ann Pocket Part, at 43;
 
 see also,
 
 New York State Senate Mem in Support, Bill Jacket, L 1992, ch 474). Because no similar amendment to section 205-a has been effected, it can be inferred that the Legislature has decided to retain the traditional premises-based liability under the General Municipal Law § 205-a right of action for firefighters.
 

 Thus, while defendant Zane, as the owner of the premises, may clearly be held directly liable under General Municipal Law § 205-a for the building code violations, defendant contractors may be held similarly liable only if they were in control of the premises "at the time of [the firefighter’s] injury” (General Municipal Law § 205-a).
 
 [2]
 
 Under the terms of the statute, a contractor may be held liable if employed on the premises or engaged in maintaining or repairing it at the time of the firefighter’s injury
 
 (see, e.g., Carroll v Roman Catholic Diocese,
 
 26 AD2d 552,
 
 affd
 
 19 NY2d 658;
 
 Andreaccio v Unique Parking Corp.,
 
 158 AD2d 222;
 
 cf., Furch v General Elec. Co.,
 
 142 AD2d 8, 14). Since defendant contractors Braun, J.M. Braun Builders and Olivieri had no control over the premises at the time of the injury to the firefighters, having completed their engagements some 12 years prior to that date, the firefighters’ statutory causes of action against them were
 
 *446
 
 properly dismissed
 
 (see, Furch v General Elec. Co.,
 
 142 AD2d 8, 14,
 
 supra).
 

 Accordingly, in
 
 Zanghi v Niagara Frontier Transp. Commn.,
 
 the order of the Appellate Division should be affirmed, with costs; in
 
 Roquet v Braun,
 
 the order of the Appellate Division should be modified in accordance with the opinion herein, with costs to appellants as against respondent Leonard Zane, and, as so modified, affirmed, with costs to the other defendants-respondents as against appellants; and, in
 
 Ruocco v New York City Tr. Auth.,
 
 the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Bellacosa, Smith, Levine and Ciparick concur.
 

 In
 
 Zanghi v Niagara Frontier Transp. Commn:
 
 Order affirmed, with costs.
 

 In
 
 Raquet v Braun:
 
 Order modified in accordance with the opinion herein, with costs to appellants as against respondent Leonard Zane, and, as so modified, affirmed, with costs to the other defendants-respondents as against appellants.
 

 In
 
 Ruocco v New York City Tr. Auth.:
 
 Order affirmed, with costs.
 

 [1]
 

 . Supreme Court dismissed plaintiffs complaint against Niagara Frontier Transportation Commission on the ground that it was not a party to the lease agreement with Greyhound. The complaint against Niagara Frontier Transit Authority was dismissed as time-barred.
 

 [2]
 

 . Although the Carpet Factory defendants, as tenants in possession at the time of the fire, were parties in control of the premises against whom liability may be asserted under section 205-a, no disposition of their motion to dismiss the complaint against them was made by Supreme Court, and they appeared neither in the Appellate Division nor before this Court. Accordingly, we make no disposition as to those defendants.