[850 NYS2d 123]

EDWARD TERRANOVA, Respondent, et al., Plaintiff, v NEW YORK CITY TRANSIT AUTHORITY, Appellant.

Second Department, December 18, 2007

APPEARANCES OF COUNSEL

*Wallace D. Gossett*, Brooklyn (*Lawrence A. Silver* of counsel), for appellant.

*Morton Povman, P.C.*, Forest Hills (*Bruce Povman* of counsel), for respondent.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Stephen J. McGrath* and *Cheryl Payer* of counsel), for City of New York, amicus curiae.

**OPINION OF THE COURT**

SPOLZINO, J.P.

The plaintiff Edward Terranova (hereinafter the plaintiff) is a New York City firefighter who was injured in the course of a fire at a bus depot owned by the defendant, the New York City Transit Authority (hereinafter the Transit Authority). The plaintiff contends that his injuries were the result of the Transit Authority's failure to comply with various provisions of the Administrative Code of the City of New York (hereinafter the Administrative Code) and that, as a result, he is entitled to recover damages from the Transit Authority pursuant to General Municipal Law § 205-a. The jury agreed with the plaintiff and awarded him substantial damages, primarily in compensation for future lost wages. After a hearing, the Supreme Court determined, among other things, that the plaintiff's disability retirement pension was not a collateral source within the meaning of CPLR 4545 (c) and therefore declined to reduce the amount of the verdict by the value of the disability retirement pension payments that the plaintiff will receive. The Supreme Court subsequently denied the Transit Authority's motion, in effect, for leave to reargue that branch of its prior motion which was for a collateral source offset.

The Transit Authority makes three arguments on these appeals. First, the Transit Authority asserts that, pursuant to Public Authorities Law § 1266 (8), it is exempt from the provisions of the Administrative Code and, therefore, cannot be held liable under General Municipal Law § 205-a for failing to comply with the standards the code imposes. Second, the Transit Authority contends that, even if the provisions of the Administrative Code apply, the Transit Authority is not responsible for any deficiency in its compliance because it did not have notice of the allegedly dangerous condition that resulted in the plaintiff's injuries. Finally, the Transit Authority argues that, even if it is liable for the plaintiff's injuries, the Supreme Court erred in denying that branch of its motion which was to reduce the judgment by the amount of the plaintiff's disability retirement pension payments.

We do not find the Transit Authority's arguments with respect to liability to be persuasive. We do conclude, however, that the plaintiff's disability retirement pension is a collateral source within the meaning of CPLR 4545 (c), and that the verdict consequently should have been reduced. We, therefore, reverse the judgment, grant the Transit Authority's request for a collateral source offset, modify the order dated December 13, 2005, accordingly, and remit the matter to the Supreme Court, Richmond County, to reduce the award of damages to the plaintiff by the amount of his disability retirement pension in accordance herewith, and for the entry of an appropriate amended judgment.

Before turning to the Transit Authority's substantive arguments, three matters of appellate housekeeping must be addressed. First, the Transit Authority's motion, denominated as one for leave to renew and reargue that branch of its prior motion which was for a collateral source offset, was, in actuality, a motion for leave to reargue (see CPLR 2221 [d], [e]), and, as such, the order denying the motion is not appealable (see Crawn v Sayah, 31 AD3d 367 [2006]; Salgado v Ring, 21 AD3d 363 [2005]; Rivera v Toruno, 19 AD3d 473, 474 [2005]; Koehler v Town of Smithtown, 305 AD2d 550, 551 [2003]; Sallusti v Jones, 273 AD2d 293, 294 [2000]). Second, the plaintiff's contention that appellate review of the collateral source issue is foreclosed by the Transit Authority's failure to file a notice of appeal from the December 13, 2005, order is without merit. That order is brought up for review on the appeal from the judgment (see CPLR 5501 [a] [1]). Third, we decline to address the plaintiff's contention that the defendant waived the right to seek a collateral source offset by not raising it as an affirmative defense in its answer, since that argument was not made before the Supreme Court (see Weber v Jacobs, 289 AD2d 226 [2001]; Rotundo v S & C Magnetic Resonance Imaging, 255 AD2d 573, 574 [1998]).

■ The principal issue presented on this appeal is whether the Transit Authority may be held liable to an injured firefighter under General Municipal Law § 205-a for failing to comply with the building maintenance provisions of the Administrative Code. The Transit Authority asserts that it is exempt from those requirements pursuant to Public Authorities Law § 1266 (8) and that, as a result, it cannot be held liable to the plaintiff pursuant to General Municipal Law § 205-a, even if it fails to comply. We conclude that the Transit Authority is incorrect.

Prior to May 15, 2000, Public Authorities Law § 1266 (8) applied only to the Metropolitan Transportation Authority (hereinafter the MTA). As a result, when the Transit Authority failed to comply with local regulations governing the maintenance of its property, it was held liable, in the same manner as any other property owner, to firefighters and police officers who were injured in the course of their duties on its property (see *Huerta v New York City Tr. Auth.*, 290 AD2d 33 [2001]; *Farrington v City of New York*, 240 AD2d 697 [1997]; *D'Arpa v New York City Tr. Auth.*, 239 AD2d 126 [1997]).

Since then, however, the statute has been amended to confer upon the Transit Authority the same advantages the MTA enjoys in its relationship with local government (see L 2000, ch 61, part O, § 23). The exemption provided by the statute operates in two specific ways. First, it deprives local governments of "jurisdiction over any facilities" of the Transit Authority and its "activities or operations." Second, it provides that

"[t]he local laws, resolutions, ordinances, rules and regulations of a municipality or political subdivision . . . conflicting with this title or any rule or regulation of the . . . New York city transit authority or its subsidiaries, shall not be applicable to the activities or operations of the . . . New York city transit authority, or the facilities of the . . . New York city transit authority and its subsidiaries" (Public Authorities Law § 1266 [8]).

The potential liability of the Transit Authority under General Municipal Law § 205-a is not affected by either of these provisions.

When a firefighter sues under General Municipal Law § 205-a, the firefighter is not relying upon the "jurisdiction" of the local government with whose code it is alleged the Transit Authority failed to comply. Rather, the right of recovery which the firefighter asserts is derived from state law, not local law, and the jurisdiction to which the Transit Authority is required to submit is that of the state courts, not that of any local court or other local body. That the Legislature chose to define the standard of conduct by reference to local law does not, in itself, transform the exercise by state courts of authority provided for under state law into an exercise of local jurisdiction. As a result, a General Municipal Law § 205-a claim against the Transit Authority is not barred by the first prong of Public Authorities Law § 1266 (8).

The Transit Authority's exemption claim fares no better under the second prong. The provisions of the Administrative Code in issue here require that "[a]ll buildings and all parts thereof shall be maintained in a safe condition" (Administrative Code § 27-127) and make the owner "responsible at all times for the safe maintenance of the building and its facilities" (Administrative Code § 27-128). The Transit Authority has not pointed to any provision of the MTA title of the Public Authorities Law or to any rule or regulation that it has adopted requiring that its premises be maintained in a manner other than that required by the Administrative Code. Since the second prong of the exemption merely defines the victor in a conflict between the Transit Authority's regulations and those of local government, and there does not appear to be any such conflict here, the Transit Authority's argument on the basis of that prong is also without merit.

Even if the statute were to be read as affecting the Transit Authority's liability under General Municipal Law § 205-a, however, the Transit Authority would not be entitled to the exemption it seeks in the situation presented here. Contrary to the Transit Authority's argument, the exemption provided by Public Authorities Law § 1266 is not absolute. It does not apply to those facilities of the Transit Authority that are "devoted to purposes other than transportation or transit purposes" (Public Authorities Law § 1266 [8]). An ejector pump room at a bus depot, while not unrelated to the Transit Authority's role as a provider of transportation services, is not, in itself, "devoted to . . . transportation or transit purposes." The statute, therefore, does not exempt the Transit Authority from liability for failure to maintain such a facility in compliance with the provisions of the Administrative Code.

The distinction drawn by the statute in this regard follows from the general principal that public authorities "are 'independent and autonomous' to the extent that they should be free from requirements imposed on other State agencies that would interfere with the accomplishment of the public corporation's purpose" (*Matter of Levy v City Commn. on Human Rights*, 85 NY2d 740, 745 [1995]). A public authority is not exempt, however, from requirements that do not interfere with its public purposes (*id.*; *see Huerta v New York City Tr. Auth.*, 290 AD2d 33 [2001]). The Transit Authority's purposes have been defined as "the acquisition . . . [and] operation of transit facilities in accordance with the provisions of this title for the convenience

and safety of the public on a basis which will enable the operations thereof'' (Public Authorities Law § 1202 [1]). Requiring the Transit Authority to maintain the ejector pump room in which the plaintiff was injured does not interfere with these purposes.

This analysis is akin to the distinction that has been drawn between the governmental functions and the proprietary functions of a public entity in determining the extent to which that entity will be shielded from liability in the public interest (*see Clinger v New York City Tr. Auth.*, 85 NY2d 957, 959-960 [1995]; *Miller v State of New York,* 62 NY2d 506, 511-512 [1984]). Focusing on ''the specific act or omission out of which that injury is claimed to have arisen and the capacity in which that act or failure to act occurred'' (*Weiner v Metropolitan Transp. Auth.*, 55 NY2d 175, 182 [1982]), governmental activities and proprietary activities have been described as forming two ends of a single continuum (*see Miller v State of New York,* 62 NY2d at 511-512). Discretionary determinations such as the allocation of public safety resources form the governmental terminus of that continuum, and activities that may be defined as maintenance are decidedly on the proprietary end (*id.*). As a result, with respect to the maintenance of its nontransportation facilities, the Transit Authority is subject to the same duty of care as any other potential tortfeasor (*see Dempsey v Manhattan & Bronx Surface Tr. Operating Auth.*, 214 AD2d 334 [1995]) and, therefore, like any other landlord, is liable under General Municipal Law § 205-a when its failure to comply has a ''reasonable connection'' to an injury sustained by a firefighter (*Johnson v Riggio Realty Corp.*, 153 AD2d 485, 487 [1989]).

We also agree with the plaintiff that the Supreme Court correctly rejected the Transit Authority's argument that the verdict should be set aside because the plaintiff did not establish its failure to comply with the code provisions in issue. The standard by which such claims are addressed is familiar. ''For a court to conclude that a jury verdict is not supported by legally sufficient evidence, there must be no valid line of reasoning and permissible inferences which could possibly lead rational persons to the conclusions reached by the jury on the basis of the evidence presented at trial'' (*Anthony v New York City Tr. Auth.*, 38 AD3d 484, 485 [2007]; *see Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]; *Nicastro v Park*, 113 AD2d 129, 132 [1985]). Applying that standard here, the Supreme Court correctly denied that branch of the Transit Authority's motion

which was pursuant to CPLR 4404 (a) to set aside the verdict as against the weight of the evidence.

General Municipal Law § 205-a establishes the right of an injured firefighter to recover against any party whose neglect or omission to comply with governmental requirements results directly or indirectly in the firefighter's injury (*see Giuffrida v Citibank Corp.*, 100 NY2d 72, 79 [2003]; *Zanghi v Niagara Frontier Transp. Commn.*, 85 NY2d 423, 441 [1995]). The plaintiff alleged that the Transit Authority had failed to comply with several provisions of the Administrative Code. In addressing that branch of the Transit Authority's motion which was to set aside the verdict, however, the Supreme Court focused on only two such provisions, sections 27-127 and 27-128, reasoning that the overwhelming evidence of the Transit Authority's failure to comply with those provisions made it unnecessary to consider the sufficiency of the evidence as to the remaining code provisions. The Supreme Court was correct.

The code provisions in issue provide that "[a]ll buildings and all parts thereof shall be maintained in a safe condition" (Administrative Code § 27-127) and make the owner "responsible at all times for the safe maintenance of the building and its facilities" (Administrative Code § 27-128). The failure to comply with these provisions constitutes a sufficient predicate for liability under General Municipal Law § 205-a (*see Pirraglia v CCC Realty NY Corp.*, 35 AD3d 234, 235 [2006]; *Maiello v City of New York*, 273 AD2d 284 [2000]; *Farrington v City of New York*, 240 AD2d 697, 698 [1997]). The Transit Authority's argument is that it did not have sufficient notice of the allegedly unsafe condition that it may be held liable. In light of the relaxed notice requirement applicable to claims under General Municipal Law § 205-a, however, we reject the Transit Authority's argument.

Recovery under General Municipal Law § 205-a does not require proof of such notice as would be necessary to a claim in common-law negligence, i.e., actual or constructive notice of the particular defect on the premises causing injury (*see Anthony v New York City Tr. Auth.*, 38 AD3d 484 [2007]; *McCullagh v McJunkin*, 240 AD2d 713 [1997]; *Lusenskas v Axelrod*, 183 AD2d 244, 248-249 [1992]). The statute requires only that the circumstances surrounding the failure to comply indicate that the failure was " 'a result of any neglect, omission, willful or culpable negligence' on the defendant's part" (*Lusenskas v Axelrod*, 183 AD2d at 248, quoting General Municipal Law § 205-a

[1]; *see Anthony v New York City Tr. Auth.*, 38 AD3d 484 [2007]; *Lustenring v 98-100 Realty*, 1 AD3d 574, 578 [2003]; *McCullagh v McJunkin*, 240 AD2d 713 [1997]).

The evidence at trial with respect to the Transit Authority's culpability was uncontradicted. The plaintiff testified that as he entered a small ejector pump room located off a bathroom in the depot, he fell, striking his shoulder on a metal partition, when his feet slid out from under him on accumulated grease, papers, and other debris. The Transit Authority employee responsible for cleaning the depot, Joseph O'Callaghan, testified that the door connecting that room to the bathroom lacked a door sweep, creating a gap between the bottom edge of the door and the floor of the bathroom that allowed debris and other waste from the bathroom to pass under the door and into the ejector pump room. O'Callaghan further testified that although he had noticed the gap under the door, he had no responsibility for cleaning the ejector pump room and was not aware of anyone else who had such responsibility. He had cleaned the ejector pump room on only one occasion, when there was a sewer backup, and had not been in the room for at least six months.

On this record, there is no question that the potentially dangerous condition—the accumulation of waste and debris in the pump room resulting from the absence of a door-sweep—was apparent, that the Transit Authority had sufficient time to remedy it, and that the Transit Authority had failed to do so. There is, thus, ample evidence upon which the jury could reasonably have concluded that an omission on the part of the Transit Authority was responsible for the plaintiff's injuries (*see O'Neill v Julav Realty*, 2 AD3d 194, 195 [2003]; *Lusenskas v Axelrod*, 183 AD2d at 249). Thus, unlike the situation presented in *Lustenring v 98-100 Realty* (1 AD3d 574 [2003]), the plaintiff here has demonstrated both a culpable failure on the part of the Transit Authority to comply with sections 27-127 and 27-128 of the Administrative Code and a "practical or reasonable connection" between that omission and the injury sustained by the plaintiff. The plaintiff thus established his claim for damages pursuant to General Municipal Law § 205-a.

■ Although the jury's verdict in favor of the plaintiff with respect to liability therefore must be upheld, the Transit Authority is correct that the Supreme Court should have offset a portion of the lost earnings award by the amount of

the disability pension that the plaintiff was receiving. Pursuant to CPLR 4545 (c), where a plaintiff has been awarded lost earnings, a defendant may introduce evidence "to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from any collateral source, such as . . . employee benefit programs." When there is a "direct correspondence between the item of loss and the type of collateral reimbursement" (*Bryant v New York City Health & Hosps. Corp.*, 93 NY2d 592, 607 [1999]), and "the plaintiff is legally entitled to the continued receipt of such collateral source" (CPLR 4545 [c]; *Oden v Chemung County Indus. Dev. Agency*, 87 NY2d 81, 88 [1995]), the judgment must be reduced by the amount of the collateral source payment (*see Oden v Chemung County Indus. Dev. Agency*, 87 NY2d at 86-87; *Manfredi v Preston*, 246 AD2d 580 [1998]). The burden is on the party claiming the offset to prove its entitlement by clear and convincing evidence (*see Quezada v O'Reilly-Green*, 24 AD3d 744, 746 [2005]; *Sternfeld v Forcier*, 248 AD2d 14, 16 [1998]; *Caruso v LeFrois Bldrs.*, 217 AD2d 256, 259 [1995]). The Transit Authority carried that burden successfully here.

The jury awarded damages for future loss of earnings in the amount of $700,000, consistent with the evidence that the plaintiff earned approximately $70,000 per year as a firefighter and that it was likely that, but for the accident, he would have continued to do so until his retirement 10 years later. The parties stipulated at the collateral source hearing that the plaintiff was awarded a line-of-duty accident disability retirement on December 20, 2002, and retired the following day, at which time he began to receive pension payments consisting of a percentage of his prior earnings. At the time of his retirement, the plaintiff had 10 years of service as a firefighter. The testimony at the hearing established that, but for the accident, the plaintiff would not have been entitled to any payments from his pension until he had 20 years of service, 10 years thereafter. The Transit Authority thus established clearly and convincingly that the pension payments the plaintiff receives correspond directly with the jury's award for future lost wages.

The Transit Authority also established by clear and convincing evidence that the plaintiff has a legal right to receive such payments continuously. According to the testimony at the hearing, the plaintiff may be deprived of his pension payments, in whole or in part, only if the plaintiff

were to earn income in excess of a particular earning cap, accept employment with another public entity, or be found able to engage in gainful employment. The plaintiff testified, however, that he had neither scheduled any job interviews nor sought work in other fields and that he was not currently working, except for some Internet work as an affiliate travel agent earning an amount well below the cap. The plaintiff's orthopedic surgeon testified that the plaintiff could not engage in physical labor due to his injury and that he would likely develop future problems requiring additional surgeries. "[T]he mere possibility that a disabled plaintiff's condition may improve . . . is too speculative to preclude application of the collateral source rule" (*Young v Knickerbocker Arena*, 281 AD2d 761, 764 [2001]; *Caruso v LeFrois Bldrs.*, 217 AD2d at 259). The Transit Authority thus met its burden of proving that it is highly probable that the plaintiff will continue to be eligible for his disability pension with reasonable certainty (*see Caruso v LeFrois Bldrs.*, 217 AD2d 256 [1995]; *cf. Kihl v Pfeffer*, 47 AD3d 154 [2007]; *Ruby v Budget Rent A Car Corp.*, 23 AD3d 257 [2005]; *Young v Knickerbocker Arena*, 281 AD2d 761 [2001]).

As a result, the Transit Authority established that the plaintiff's disability retirement pension was a collateral source within the meaning of CPLR 4545 (c) that must be set off against the amount of the verdict. Accordingly, we reverse the judgment, on the law, grant that branch of the Transit Authority's motion which was pursuant to CPLR 4545 (c) for a collateral source offset, remit the matter to the Supreme Court, Richmond County, to reduce the award of damages to the plaintiff by the amount of his disability retirement pension in accordance herewith, and for the entry of an appropriate amended judgment, and modify the order dated December 13, 2005, accordingly.

KRAUSMAN, ANGIOLILLO and McCARTHY, JJ., concur.

Ordered that the judgment is reversed, on the law, without costs or disbursements, that branch of the defendant's motion which was pursuant to CPLR 4545 (c) for a collateral source offset is granted, the matter is remitted to the Supreme Court, Richmond County, to reduce the award of damages to the plaintiff Edward Terranova by the amount of his disability retirement pension in accordance herewith, and for the entry of an appropriate amended judgment, and the order dated December 13, 2005, is modified accordingly; and it is further,

Ordered that the appeal from the order dated May 30, 2006, is dismissed, without costs or disbursements, as no appeal lies from an order denying reargument, and in any event the appeal from that order has been rendered academic in light of our determination of the appeal from the judgment.