[877 NYS2d 153]

Nocenzu Cusumano, Respondent, et al., Plaintiff, v City of New York, Appellant.

Second Department, April 7, 2009

6

## APPEARANCES OF COUNSEL

*Michael A. Cardozo, Corporation Counsel*, New York City (*Pamela Seider Dolgow* and *Elizabeth S. Natrella* of counsel), for appellant.

*Miller & Eisenman, LLP*, New York City (*Michael P. Eisenman* of counsel), for respondent.

## OPINION OF THE COURT

DICKERSON, J.

### The Accident

The plaintiff Nocenzu Cusumano (hereinafter the plaintiff) was a firefighter employed by the New York City Fire Department. He alleged that he was injured on December 22, 1999, when he fell down a flight of stairs while attending Certified First Responder Defibrillator training in a building owned by the defendant City of New York.

The staircase where the plaintiff fell provided access between the first floor and the basement of the building. The plaintiff allegedly slipped on debris located at the top of the stairwell and could not grasp the handrail to prevent himself from falling. He fell down the full flight of stairs, landing on the concrete floor of the basement.

### The Plaintiff's Injuries

The plaintiff suffered multiple injuries. These included a fracture dislocation of the metacarpal-carpal bones in his left, nondominant, wrist with permanent restriction of motion, requiring surgery involving the placement of four stainless steel pins in his hand; degenerative joint disease at the AC joint in his left shoulder with impingement, requiring two surgeries involving the removal of bone and scar tissue; and reinjury to his right knee resulting in a torn medial meniscus, requiring arthroscopic surgery.

### General Municipal Law § 205-a

The plaintiff commenced this action pursuant to General Municipal Law § 205-a to recover damages for personal injuries and his wife asserted a derivative cause of action. "General Mu-

nicipal Law § 205-a establishes the right of an injured firefighter to recover against any party whose neglect or omission to comply with governmental requirements results directly or indirectly in the firefighter's injury" (*Terranova v New York City Tr. Auth.*, 49 AD3d 10, 17 [2007]; *see Giuffrida v Citibank Corp.*, 100 NY2d 72, 79 [2003]; *Zanghi v Niagara Frontier Transp. Commn.*, 85 NY2d 423, 441 [1995]). In order to establish a prima facie case under General Municipal Law § 205-a, a plaintiff must demonstrate a violation by the defendant of a statute or ordinance which directly or indirectly has a reasonable connection to the firefighter's described injury (*see generally Doherty v Sparacio*, 35 AD3d 530, 531 [2006]; *Kenavan v City of New York*, 267 AD2d 353, 355 [1999]).

Here, the plaintiffs predicate liability on alleged violations by the defendant of Administrative Code of the City of New York (hereinafter Administrative Code) § 27-375 (f), which provides requirements for handrails located in interior stairs. They also predicate liability on alleged violations of Administrative Code §§ 27-127 and 27-128. These sections, in essence, provide that the owner of a building must maintain it in a safe condition, and that the owner shall be responsible for the safe maintenance of the building and its facilities (*see* Administrative Code §§ 27-127, 27-128).

### Administrative Code § 27-375 (f)

Administrative Code § 27-375 sets forth a number of requirements with which "interior stairs" must comply. These include, inter alia, requirements pertaining to handrails (*see* Administrative Code § 27-375 [f]).

Here, the Supreme Court improperly shifted the burden from the plaintiffs to the defendant to prove that it did not violate Administrative Code § 27-375 (f). In any event, at trial, the plaintiffs introduced testimony and photographs of the stairwell, attempting to prove that the condition of the staircase violated that section. However, contrary to the plaintiff's contention, the Supreme Court improperly determined that the stairs were interior stairs as that term is defined in Administrative Code § 27-232. That section defines "interior stair" as "[a] stair within a building, that serves as a required exit" (Administrative Code § 27-232). Because the stairwell at issue here did not serve as a required exit from the building, it did not qualify as an interior stair (*id.*). Accordingly, the requirements set forth in Administrative Code § 27-375 (f) governing handrails installed

in interior stairs did not apply (*see* Administrative Code §§ 27-232, 27-375; *Schwartz v Hersh*, 50 AD3d 1011, 1012 [2008]; *Dooley v Vornado Realty Trust*, 39 AD3d 460, 460 [2007]; *Maraia v Church of Our Lady of Mount Carmel*, 36 AD3d 766 [2007]; *Mansfield v Dolcemascolo*, 34 AD3d 763, 764 [2006]; *Walker v 127 W. 22nd St. Assoc.*, 281 AD2d 539, 540 [2001]).

Administrative Code §§ 27-127 and 27-128

Administrative Code § 27-127 provides,

> "All buildings and all parts thereof shall be maintained in a safe condition. All service equipment, means of egress, devices, and safeguards that are required in a building by the provisions of this code or other applicable laws or regulations, or that were required by law when the building was erected, altered, or repaired, shall be maintained in good working order."

Administrative Code § 27-128 provides, "The owner shall be responsible at all times for the safe maintenance of the building and its facilities." The failure to comply with these sections constitutes a sufficient predicate for liability under General Municipal Law § 205-a (*see Terranova v New York City Tr. Auth.*, 49 AD3d at 17).

Moreover, "[r]ecovery under General Municipal Law § 205-a does not require proof of such notice as would be necessary to a claim in common-law negligence, i.e., actual or constructive notice of the particular defect on the premises causing injury" (*id.*; *see Anthony v New York City Tr. Auth.*, 38 AD3d 484 [2007]; *McCullagh v McJunkin*, 240 AD2d 713 [1997]; *Lusenskas v Axelrod*, 183 AD2d 244, 248-249 [1992]). "The statute requires only that the circumstances surrounding the failure to comply indicate that the failure was ' "a result of any neglect, omission, willful or culpable negligence" ' on the defendant's part" (*Terranova v New York City Tr. Auth.*, 49 AD3d at 17, quoting *Lusenskas v Axelrod*, 183 AD2d at 248; *see* General Municipal Law § 205-a).

■ Here, we find that the plaintiffs introduced sufficient evidence for the jury to conclude rationally that the defendant violated Administrative Code §§ 27-127 and 27-128 by failing to maintain the stairwell in a safe condition based on the condi-

tion of the handrail.\* While our dissenting colleague finds that, under the circumstances presented here, General Municipal Law § 205-a and Administrative Code §§ 27-127 and 27-128 do not afford any basis for recovery, we conclude that his collective reading of these sections and case law would, in effect, largely eliminate the duties imposed by Administrative Code §§ 27-127 and 27-128, and render those provisions inapplicable to all but the most commonplace conditions.

### The Handrail

As previously stated, Administrative Code § 27-375 (f) was not applicable here, as the stairway at issue did not qualify as an interior stair within the meaning of Administrative Code § 27-232. However, we find that the jury nonetheless could have concluded that the defendant failed to maintain the stairway in a safe condition based on the nature and placement of the handrail. While our dissenting colleague concludes that, in light of the fact that Administrative Code § 27-375 (f) does not apply here, the plaintiff, under the circumstances of this case, has no grounds for recovery, we find that the inapplicability of that section does not divest the defendant of its obligations under Administrative Code §§ 27-127 and 27-128 to maintain the building in a safe condition, or of potential liability for failing to do so.

The plaintiff testified that he fell when he slipped on debris in the stairwell. As he lost his balance, he attempted to grasp a handrail but was unable to do so, and fell down the full flight of stairs to the basement floor. The plaintiff testified that, when he lost his balance, he attempted to grasp the handrail but could not because the handrail "wasn't a real handrail, it was just pieces of wood nailed to the wall, you couldn't hold onto it, you couldn't put your hand around it." He testified that, as a firefighter, he "always utilized" handrails, and that he had never encountered a handrail which he was unable to put his hand around.

Michael Just, a registered architect, examined the stairwell and took measurements of it. The top handrail on the left side consisted of "two pieces of wood nailed to each other and nailed to the wall." Just observed that the distance from the wall to the handrail on the left side of the stairwell was 1¼ inches.

---

\* The parties do not discuss on appeal, nor do we consider, whether the alleged presence of debris at the top of the stairwell presented an additional basis for a finding of liability on the part of the defendant.

Just testified that the handrail did not provide a proper clearance because it did not allow his hand to grasp the rail. He further testified that the handrail did not constitute a safe condition under Administrative Code § 27-127 because it did not provide for any clearance. The plaintiff, Just, Lieutenant Michael Camarco, and Paul Soehren, Deputy Director of Facilities Construction Management for the New York City Fire Department, all testified that a handrail in a stairway is a safety device.

"For a court to conclude as a matter of law that a jury verdict is not supported by sufficient evidence . . . [i]t is necessary to . . . conclude that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men [and women] to the conclusion reached by the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]; *see Munoz v City of New York*, 55 AD3d 697 [2008]).

> "[I]n any case in which it can be said that the evidence is such that it would not be utterly irrational for a jury to reach the result it has determined upon, and thus a valid question of fact does exist, the court may not conclude that the verdict is as a matter of law not supported by the evidence" (*Cohen v Hallmark Cards*, 45 NY2d at 499).

Viewing the evidence in the light most favorable to the plaintiffs and affording them every favorable inference which may be drawn from the evidence (*id.*; *see Eliopoulos v Healthcheck, Inc.*, 51 AD3d 622, 623 [2008]), we are satisfied that the evidence before the jury was legally sufficient for it to conclude rationally that the defendant failed to maintain the stairway in a safe condition based on the nature and placement of the handrail (*see* Administrative Code §§ 27-127, 27-128).

## Damages for Pain and Suffering

While the amount of damages to be awarded for personal injuries is primarily a question for the jury, it may be set aside if it deviates materially from what would be reasonable compensation (*see* CPLR 5501 [c]; *Deshommes v Hussain*, 47 AD3d 869, 869 [2008]; *Pitera v Winzer*, 18 AD3d 457, 457-458 [2005]). "Although prior damage awards in cases involving similar injuries are not binding upon the courts, they guide and enlighten them with respect to determining whether a verdict in a given case constitutes reasonable compensation" (*Miller v*

12

*Weisel*, 15 AD3d 458, 459 [2005]; *see Senko v Fonda*, 53 AD2d 638, 639 [1976]).

■ Here, upon consideration of the nature and extent of the injuries sustained by the plaintiff, the jury's finding that the plaintiff sustained damages in the sum of $1,200,000 for past pain and suffering deviated materially from what would be reasonable compensation to the extent indicated herein (*see Jansen v Raimondo & Son Constr. Corp.*, 293 AD2d 574 [2002]; *Purcell v Axelsen*, 286 AD2d 379 [2001]; *Frascarelli v Port Auth. of N.Y. & N.J.*, 269 AD2d 422, 423 [2000]; *Perez v Farrell Lines*, 223 AD2d 388 [1996]).

## Conclusion

We find that the plaintiffs failed to establish that the defendant violated Administrative Code § 27-375 (f), as the stairs where the plaintiff fell were not "interior stairs" within the meaning of Administrative Code § 27-232. However, based on the nature and placement of the handrail, we find that the jury properly concluded that the defendant failed to maintain the stairway in a safe condition in violation of Administrative Code §§ 27-127 and 27-128. Finally, we find that the award of $1,200,000 for past pain and suffering deviated materially from what would be reasonable compensation to the extent indicated herein. The City's remaining contention is without merit.

Accordingly, the judgment is modified, on the law, the facts, and in the exercise of discretion, by deleting the provision thereof awarding the plaintiff Nocenzu Cusumano damages in the sum of $1,200,000 for past pain and suffering; as so modified, the judgment is affirmed insofar as appealed from, that branch of the defendant's motion pursuant to CPLR 4404 (a) which was to set aside the verdict as to damages for past pain and suffering as excessive is granted, the order entered August 31, 2006 is modified accordingly, and a new trial as to damages for past pain and suffering is granted unless, within 30 days after service upon the plaintiff Nocenzu Cusumano of a copy of this opinion and order, the plaintiff Nocenzu Cusumano shall serve and file in the office of the Clerk of the Supreme Court, Queens County, a written stipulation consenting to decrease the verdict as to damages for past pain and suffering from the sum of $1,200,000 to the sum of $755,000, and to the entry of an appropriate amended judgment accordingly; in the event that the plaintiff Nocenzu Cusumano so stipulates, the judgment, as so reduced and amended, is affirmed insofar as appealed from.

SPOLZINO, J.P. (dissenting and voting to reverse the judgment insofar as appealed from, grant that branch of the defendant's motion pursuant to CPLR 4404 [a] which was to set aside the verdict as to liability for the plaintiffs' failure to establish a prima facie case and for judgment as a matter of law, and dismiss the complaint, with the following memorandum).

Liability may be imposed under General Municipal Law § 205-a only where a plaintiff demonstrates that the defendant has violated "a 'well-developed body of law and regulation' that 'imposes clear duties' " (*Galapo v City of New York*, 95 NY2d 568, 574 [2000], quoting *Desmond v City of New York*, 88 NY2d 455, 464 [1996]). As I read the record, the plaintiffs did not make that showing here. I would, therefore, reverse the judgment of the Supreme Court, grant that branch of the defendant's motion pursuant to CPLR 4404 (a) which was to set aside the verdict as to liability for the plaintiffs' failure to establish a prima facie case and for judgment as a matter of law, modify the order entered August 31, 2006, accordingly, and dismiss the complaint. Since my colleagues do not see it this way, I dissent, respectfully.

"General Municipal Law § 205-a establishes the right of an injured firefighter to recover against any party whose neglect or omission to comply with governmental requirements results directly or indirectly in the firefighter's injury" (*Terranova v New York City Tr. Auth.*, 49 AD3d 10, 17 [2007]). In order to sustain such a claim, a plaintiff must "[1] identify the statute or ordinance with which the defendant failed to comply, [2] describe the manner in which the firefighter was injured, and [3] set forth those facts from which it may be inferred that the defendant's negligence directly or indirectly caused the harm to the firefighter" (*Giuffrida v Citibank Corp.*, 100 NY2d 72, 79 [2003], quoting *Zanghi v Niagara Frontier Transp. Commn.*, 85 NY2d 423, 441 [1995]). This appeal concerns the first of these elements.

The plaintiff Nocenzu Cusumano, a New York City fire lieutenant, was injured when he fell on a staircase at the Fort Totten Fire Academy in Queens and was unable to grasp the handrail to arrest his fall. The plaintiffs' claim is that the finger clearance between the handrail and the wall was insufficient. To bring this claim within General Municipal Law § 205-a, the plaintiffs relied primarily on section 27-375 (f) of the Administrative Code of the City of New York (hereinafter Administrative Code). That provision mandates that "[interior] [s]tairs

. . . shall have handrails on both sides" and that "[h]andrails shall provide a finger clearance of one and one-half inches" (Administrative Code § 27-375 [f]). Here, it is undisputed that the handrail which Lieutenant Cusumano used to try to break his fall provided a finger clearance of only 1¼ inches. The majority concludes, however, and I agree, that the requirements of section 27-375 (f) do not apply, because the staircase in question is not an "interior stair" as that term is employed in the Administrative Code (*see Schwartz v Hersh*, 50 AD3d 1011, 1012 [2008]; *Dooley v Vornado Realty Trust*, 39 AD3d 460 [2007]; *Mansfield v Dolcemascolo*, 34 AD3d 763, 764 [2006]; *Weiss v City of New York*, 16 AD3d 680, 682 [2005]).

The plaintiffs also asserted that the City's failure to provide a handrail with a 1½ inch clearance violated Administrative Code §§ 27-127 and 27-128. Neither of these provisions, however, addresses the issue of handrail finger clearances. Administrative Code § 27-127 requires that "[a]ll buildings and all parts thereof shall be maintained in a safe condition" and that "[a]ll . . . means of egress, devices, and safeguards that are required in a building by the provisions of this code or other applicable laws or regulations, or that were required by law when the building was erected, altered, or repaired, shall be maintained in good working order" (Administrative Code § 27-127). Section 27-128 identifies the property owner as the party responsible for code compliance, without imposing any substantive obligation (*see* Administrative Code § 27-128).

The evidence presented at trial with respect to a handrail standard, other than the inapplicable evidence as to Administrative Code § 27-375 (f), consisted of the testimony of several witnesses that the handrail was dangerous. Lieutenant Cusumano testified that in 31 years as a firefighter, he had "never seen anything like this." Lieutenant Michael Camarco, a 19-year firefighter with experience as an instructor of probationary firefighters and first responders and as a fire safety educator, testified that a handrail is a very important safety device for a firefighter and supposed that a banister you could not put a hand around "could pose a danger." Paul Soehren, the Deputy Director of Facilities Construction Management for the New York City Fire Department, testified that a handrail is a "major safety device." Rudolph Rinaldi, a licensed architect who is a self-employed design and construction management consultant, testified that a handrail is a "major device of the staircase" and that the staircase in question is "an amateur stairway" that

meets no national or state code. Such conclusory testimony that a situation is dangerous, however, does not constitute the required proof of "a 'well-developed body of law and regulation' that 'imposes clear duties' " (*Galapo v City of New York*, 95 NY2d at 574, quoting *Desmond v City of New York*, 88 NY2d at 464).

The principal evidence upon which the majority relies to sustain the verdict is the testimony of Michael Just, a licensed architect. Just testified with respect to section 4.8.5 of the standards established by the American National Standards Institute (hereinafter ANSI). For several reasons, however, Just's testimony is not, in my view, sufficient to support the result my colleagues have reached.

First, Just never testified to the substance of the ANSI standard. The transcript reflects that all he said with regard to the ANSI standard, before he was interrupted by the plaintiffs' counsel, was "one and a half inches." Just never explained that the measurement applies to finger clearance and did not otherwise testify to the meaning of the $1^1/_2$ inch measurement to which he referred. Contrary to the view of the majority, I do not find that to be a sufficient statement of the handrail standard for the jury to conclude rationally that the standard had been violated.

Even if it could be argued, moreover, that the citation of a standard, without testimony as to its substance or the introduction into evidence of a document reflecting that substance, could be the basis for a reasonable jury verdict, that argument would fail here because the citation itself was incorrect. Section 4.8.5, to which Just testified, applies to ramps, as he stated; the standard applicable to stairways, 4.9.3, was never mentioned.

Equally important, the ANSI handrail standard was never a part of the jury's deliberations. Although the plaintiffs initially requested that the ANSI standard be charged to the jury, they later consented to its omission from the charge, after the Supreme Court suggested that the ANSI standard was identical to Administrative Code § 27-375 (f). If, as we all agree, the handrail provision of the Administrative Code is inapplicable here, the identical ANSI standard is inapplicable as well. The plaintiffs do not argue otherwise on this appeal.

To affirm the judgment on the basis of Just's testimony with respect to the ANSI standard requires us to find that the jury rationally decided in favor of the plaintiffs on the basis of a standard as to which it never heard any testimony, received any

documentary evidence or was instructed by the court. In my view, it is incorrect to do so. As the majority accurately notes, "[f]or a court to conclude as a matter of law that a jury verdict is not supported by sufficient evidence . . . [i]t is necessary to first conclude that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury *on the basis of the evidence presented at trial*" (*Cohen v Hallmark Cards,* 45 NY2d 493, 499 [1978] [emphasis added]; *see Nicastro v Park,* 113 AD2d 129, 132 [1985]). Here, there was simply no evidence presented at trial upon which that standard can be met.

Only Administrative Code §§ 27-127 and 27-128, themselves, remain to satisfy the plaintiffs' obligation to establish a violation of "a 'well-developed body of law and regulation' that 'imposes clear duties' " (*Galapo v City of New York,* 95 NY2d at 574, quoting *Desmond v City of New York,* 88 NY2d at 464). Neither of those provisions, however, establishes what is necessary to sustain the plaintiffs' case—a finger clearance standard for handrails.

It is true, as the majority notes, that we held in *Terranova v New York City Tr. Auth.* (49 AD3d 10, 17 [2007]) that the failure to comply with Administrative Code § 27-127 is, in itself, a sufficient predicate for liability under General Municipal Law § 205-a. The context in which we did so, however, was critically different from that in which we decide the issues here. In *Terranova,* the defendant's negligence consisted of permitting grease to build up on a pump room floor (49 AD3d at 18). Drawing from the legislative history of General Municipal Law § 205-a, and from the companion provision relating to police officers, General Municipal Law § 205-e, the Court of Appeals has held that "a statute can serve as a predicate when it contains *either* a particularized mandate *or* a clear legal duty . . . [e]ither of [which] can suffice, so long as the governmental standard is part of a well-developed body of law and regulation" (*Gonzalez v Iocovello,* 93 NY2d 539, 551 [1999]). It is not necessary to liability under General Municipal Law § 205-a, however, that a standard of care be defined by statute; a "precedentially developed standard of care" may be sufficient to impose section 205-a liability, as long as it establishes "*either* a particularized mandate *or* a clear legal duty" (*Gonzalez v Iocovello,* 93 NY2d at 551). The failure to maintain a floor free from grease, as presented in *Terranova,* violates a clear legal duty that has been well defined in precedent (*see e.g., Yaconi v Brady & Gioe, Inc.,*

246 NY 300, 302 [1927]). The same cannot be said, however, of the duty to maintain a handrail finger clearance of 1¹/₂ inches, as is necessary to the plaintiffs' case here. There is simply nothing in Administrative Code §§ 27-127 or 27-128, or the precedent applying them, that establishes, at least insofar as handrail safety is concerned, "a particularized mandate *or* a clear legal duty [that] is part of a well-developed body of law and regulation" (*Gonzalez v Iocovello*, 93 NY2d at 551) which requires such a finger clearance. As a result, in the situation presented here, neither section can provide a sufficient predicate for the imposition of liability under General Municipal Law § 205-a.

The majority's criticism that my analysis would unduly restrict the duties imposed by Administrative Code §§ 27-127 and 27-128 misses the mark. It is not my reading of General Municipal Law § 205-a that defeats the plaintiffs' claim here; the Court of Appeals has defined the requirement that liability under the statute may be found only upon proof of a violation of "a 'well-developed body of law and regulation' that 'imposes clear duties' " (*Galapo v City of New York*, 95 NY2d at 574, quoting *Desmond v City of New York*, 88 NY2d at 464). On the record presented here, the only governmental standard that requires a property owner to maintain a handrail clearance of 1¹/₂ inches, as opposed to 1¹/₄ inches, is Administrative Code § 27-375 (f). We all agree, however, that that standard does not apply. Without some other proof that there is "a particularized mandate *or* a clear legal duty [that] is part of a well-developed body of law and regulation" (*Gonzalez v Iocovello*, 93 NY2d at 551) which requires a 1¹/₂ inch handrail finger clearance in the premises at issue here, the plaintiffs have failed to make out a sufficient case under General Municipal Law § 205-a, as the Court of Appeals has defined that sufficiency. In my view, therefore, that branch of the defendant's motion pursuant to CPLR 4404 (a) which was to set aside the verdict as to liability for the plaintiffs' failure to establish a prima facie case and for judgment as a matter of law should have been granted, and the complaint should have been dismissed, and I dissent accordingly.

BALKIN and BELEN, JJ., concur with DICKERSON, J.; SPOLZINO, J., dissents and votes to reverse the judgment in a separate opinion.

Ordered that the judgment is modified, on the law, the facts, and in the exercise of discretion, by deleting the provision

thereof awarding the plaintiff Nocenzu Cusumano damages in the sum of $1,200,000 for past pain and suffering; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements, that branch of the defendant's motion pursuant to CPLR 4404 (a) which was to set aside the verdict with respect to damages for past pain and suffering as excessive is granted, the order entered August 31, 2006, is modified accordingly, and a new trial as to damages for past pain and suffering is granted unless, within 30 days after service upon the plaintiff Nocenzu Cusumano of a copy of this opinion and order, the plaintiff Nocenzu Cusumano shall serve and file in the office of the Clerk of the Supreme Court, Queens County, a written stipulation consenting to decrease the verdict as to damages for past pain and suffering from the sum of $1,200,000 to the sum of $755,000, and to the entry of an appropriate amended judgment accordingly; in the event that the plaintiff Nocenzu Cusumano so stipulates, the judgment, as so reduced and amended, is affirmed insofar as appealed from, without costs or disbursements.